**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Emma Gilmore (pro hac vice)
Michael Grunfeld (pro hac vice)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
egilmore@pomlaw.com
mgrunfeld@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Joshua L. Crowell (295411)
Jennifer M. Leinbach (281404)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcrowell@glancylaw.com

*Counsel for Plaintiffs*

*- additional counsel on signature page -*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE YAHOO! INC. SECURITIES LITIGATION<br><br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 5:17-cv-00373-LHK<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>Date:    May 3, 2018<br>Time:   1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 3, 2018 at 1:30 p.m. (or as soon thereafter as the matter may be heard), at the United States District Court for the Northern District of California, in the Courtroom of the Honorable Lucy H. Koh, located at 280 South 1st Street, San Jose, California, Lead Plaintiff Sutton View Partners LP ("Sutton View") and Named Plaintiff Nafiz Talukder ("Talukder" and together with Sutton View, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, will move the Court without opposition, upon the Stipulation and Agreement of Settlement dated March 2, 2018 (the "Stipulation") and the exhibits annexed thereto, filed herewith, upon all prior pleadings and proceedings had herein; and upon any additional evidence or argument that the Court may request, for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, in substantially the form filed herewith (the "Preliminary Approval Order"), (i) preliminarily approving the proposed settlement set forth in the Stipulation; (ii) certifying, for settlement purposes only, the proposed Settlement Class; (iii) approving the Settling Parties' proposed form and method of giving notice to the proposed Settlement Class (the "Class Notice"); and (iv) setting a date for a Settlement Final Approval Hearing and deadlines for mailing and publication of the Class Notice, the filing of Settlement Class Member objections, the submission of Settlement Class Member opt-out requests, the filing of Plaintiffs' Motion for Final Approval of the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses and reimbursement of Plaintiffs' costs and expenses pursuant to the Private Litigation Reform Act of 1995.

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY .................................................................................................. 1

II.     FACTUAL BACKGROUND ...................................................................... 3

III.    SUMMARY OF THE LITIGATION AND SETTLEMENT ........................... 3

        A.      Procedural History ......................................................................... 3

        B.      Settlement Discussions, the Settlement Stipulation, and Due Diligence ............... 6

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 7

        A.      Standards for Preliminary Approval ......................................... 7

        B.      The Proposed Settlement Merits a Presumption of Fairness ................. 9

        C.      Proposed Settlement Recovery Falls Within the Range of Possible Approval .... 10

                1.      Amount Offered Compared to the Potential Total Recovery .................. 11

                2.      Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation ................. 13

                3.      The Extent of Discovery Completed, the Stage of the Proceedings, and the Experience and Views of Counsel ...................... 14

V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................... 15

        A.      Numerosity – Rule 23(a)(1) ................................................... 16

        B.      Commonality – Rule 23(a)(2) ................................................ 17

        C.      Typicality – Rule 23(a)(3) ..................................................... 18

        D.      Adequacy – Rule 23(a)(4) ...................................................... 19

        E.      Predominance and Superiority -- Rule 23(b)(3) .................... 20

VI.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ....................... 21

VII.    PROPOSED SCHEDULE ........................................................... 23

CONCLUSION ....................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3

*Acosta v. Trans Union, LLC*,
4   243 F.R.D. 377 (C.D. Cal. 2007) .............................................. 9

5

*Alfus v. Pyramid Tech. Corp.*,
6   764 F. Supp. 598 (N.D. Cal. 1991) ........................................ 18

7

*Amchem Prods., Inc., v. Windsor*,
8   521 U.S. 591 (1997) ............................................................. 15

9

*Aarons v. BMW of N. Am., LLC*,
No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ..... 20

10

*Blackie v. Barrack*,
11   524 F.2d 891 (9th Cir. 1975) ......................................... 16, 17

12

*Browning v. Yahoo! Inc.*,
13   No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)...................... 7

14

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ................................................................ 7

15

*Churchill Vill., L.L.C. v. GE*,
16   361 F.3d 566 (9th Cir. 2004) ............................................... 10

17

*D'Amato v. Deutsche Bank*,
18   236 F.3d 78 (2d Cir. 2001) .................................................. 10

19

*Danis v. USN Commc'ns, Inc.*,
20   189 F.R.D. 391 (N.D. Ill. 1999) ........................................... 18

21

*Deaver v. Compass Bank*,
No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 111170 (N.D. Cal. Aug. 21, 2015) ................. 9

22

*Dubin v. Miller*,
23   132 F.R.D. 269 (D. Colo. 1990) ........................................... 18

24

*Eisenberg v. Gagnon*,
25   766 F.2d 770 (3d Cir. 1985).................................................. 21

26

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S.Ct. 2398 (2014) ......................................................... 13

27

28

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 8, 15, 19

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) .......................................................................... 18

*Harris v. Vector Mktg. Corp.,*
    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ................... 10

*Hayes v. MagnaChip Semiconductor Corp.,*
    No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016)................ 13

*In re Am. Bank Note Holographics, Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................. 13

*In re BankAmerica Corp. Sec. Litig.,*
    350 F.3d 747 (8th Cir. 2003) .......................................................................... 1

*In re Celera Corp. Sec. Litig.,*
    No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015)....... 14, 22

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)........................................................................... 14

*In re Cirrus Logic, Sec. Litig.,*
    155 F.R.D. 654 (N.D. Cal. 1994)....................................................................... 16

*In re Cooper Cos. Sec. Litig.,*
    254 F.R.D. 628 (C.D. Cal. 2009) ...................................................................... 20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    MDL No. 901, 1993 U.S. Dist. LEXIS 21272 (C.D. Cal. Feb. 26, 1993)............................. 21

*In re Heritage Bond Litig.,*
    No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005), ............. 7, 13

*In re Intelcom Grp., Inc. Sec. Litig.,*
    169 F.R.D. 142 (D. Colo. 1996) ....................................................................... 20

*In re Marsh & McLennan Cos. Sec. Litig.,*
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................... 9

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .......................................................................... 14

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................ 14

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 14

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................... 13

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 U.S. Dist. LEXIS 48122 (N.D. Cal. May 12, 2010)...................... 17

*In re Vivendi Universal, S.A., Sec. Litig.*,
   No. 02 Civ. 5571 (RJH), 2012 U.S. Dist. LEXIS 21732 (S.D.N.Y. Feb. 6, 2012) ................ 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ................................................................. 8

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ................................................................. 18

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ......................................................... 9, 14

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .......................... 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ....................................................................... 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)..................................................................................... 22

*Murillo v. Pac. Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) .................................................................. 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)......................................................... 8, 11, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .................................................................. 7, 13

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
   611 F. Supp. 990 (C.D. Cal. 1984) ............................................................. 16

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ............................................................... 22

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ................................................................ 17

*Silverman v. Motorola, Inc.*,
    No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ...................... 9

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................... 11

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................... 7

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) .............................................................. 17

*Williams v. Costco Wholesale Corp.*,
    No. O2cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ............... 8

*Yamner v. Boich*,
    No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) ................. 17

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ..................... 8

STATUTES

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................... 3

15 U.S.C. § 78u-4(a)(4) ............................................................................ 1

15 U.S.C. § 78u-4(a)(7) ............................................................................ 21

RULES

Fed. R. Civ. P. 23 ............................................................................... *passim*

OTHER AUTHORITIES

*Manual for Complex Litigation (Third)* § 30.41 (1995) ............................ 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Sutton View

3

Partners LP ("Sutton View") and Named Plaintiff Nafiz Talukder ("Talukder" and together with

4

Sutton View, "Plaintiffs")[1], on behalf of themselves and on behalf of all others similarly situated,

5

respectfully submit this memorandum in support of Plaintiffs' motion seeking: (i) Preliminary

6

Approval of the Proposed Settlement (the "Settlement"); (ii) conditional certification of the

7

Settlement Class; (iii) approval of the Notice to the Settlement Class; and (iv) a date for a

8

Settlement Hearing and deadlines for the mailing and publication of the Notice, the filing of

9

Settlement Class Member objections, the submission of Settlement Class Member opt-out

10

requests, the filing of Plaintiffs' Motion for Final Approval of the Settlement, and the filing of

11

Lead Counsel's application for attorneys' fees and expenses and the reimbursement of Plaintiffs'

12

costs and expenses (the "Motion").[2]  Defendants do not oppose the Motion.[3]

13

## I.    SUMMARY

14

Plaintiffs and Defendants Altaba Inc., formerly known as Yahoo! Inc. ("Altaba" or the

15

"Company"), Marissa A. Mayer ("Mayer"), Ronald S. Bell ("Bell"), and Alexander Stamos

16

("Stamos") (collectively, "Individual Defendants" and, together with Altaba, "Defendants") are

17

pleased to inform the Court that they have agreed to a cash settlement of $80 million, which will

18

resolve all claims in this Action (the "Settlement").  As demonstrated below, the proposed $80

19

million Settlement is not simply fair, reasonable, and adequate, it is an excellent result.

20

21

[1] Lead Plaintiff Ben Maher ("Maher") is currently reviewing the merits of the settlement and has declined to join this Motion at this time.  In view of their fiduciary duties to the putative class of Yahoo shareholders, Sutton View and Talukder believe that $80 million in cash is an excellent recovery and that it is in the best interests of the class to proceed with the proposed Settlement. *See In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 752 (8th Cir. 2003) (affirming district court's "overruling the objections of a fraction of the NationsBank lead plaintiff group" given the court's "responsibility to safeguard the interests of class members" and what "it viewed as the unrealistic expectations of the objecting lead plaintiffs").

22

23

24

25

[2] The Private Litigation Reform Act of 1995 ("PSLRA") specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

26

27

[3] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation") filed contemporaneously herewith.

28

Under the current putative class period, April 30, 2013 through December 14, 2016, both dates inclusive (the "Settlement Class Period), the estimated class-wide damages in this case are between $230 million to $760, depending on the trading model utilized, representing a recovery of 10.5 to 34%—a significant recovery by any measure. Such a recovery is well above the median recovery for similar securities class actions. *See*, *e.g.*, Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7 (noting that the median securities class-action settlement in 2016 was for 2.5% of estimated damages); Cornerstone Research, *Securities Class Action Settlements 2013 Review and Analysis*, at 8-9 (noting that in 2013, securities settlements overall returned a median recovery of 2.1% of damages, with 4.3% for cases with damages of between $50-124 million). If, however, Defendants were to successfully argue that Plaintiffs failed to allege scienter with respect to the 2013 Data Breach, then the class period would end on September 22, 2016, the date on which the 2014 Data Breach was publicly disclosed. Under this scenario, maximum class-wide damages would range from $171.5 million to $496 million, equating to a recovery range of 16% to 47%, an excellent outcome.

Moreover, Plaintiffs and their counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery. The Settlement was reached after one year of litigation, including (i) an extensive investigation conducted by Class Counsel; (ii) the preparation of two detailed Amended Complaints; (iii) contentious motion practice with respect to Defendants' motion to dismiss; (iv) extensive consultations with experts to evaluate loss causation damages issues; (v) the preparation and exchange of mediation statements; (vi) extensive, vigorous arm's-length settlement negotiations (including a full-day formal mediation session as well as extensive interim negotiations) conducted with an experienced mediator, the Honorable Daniel Weinstein (Ret.); and (vii) a review of a significant number of documents produced by Altaba.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval so that notice of the proposed Settlement may be disseminated to the

1   Settlement Class.

2   **II.      FACTUAL BACKGROUND**

3           This is a federal securities class action asserting claims under the Securities Exchange

4   Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 against Defendants Yahoo! Inc.

5   ("Yahoo" or the "Company"), Yahoo's former Chief Executive Officer, Mayer, Yahoo's former

6   General Counsel, Bell, and Yahoo's former Chief Information Security Officer, Stamos, on

7   behalf of investors that purchased or otherwise acquired Yahoo securities during the Settlement

8   Class Period.

9           At the crux of this action are several data breaches, all of which Plaintiffs alleged caused

10  financial harm to Yahoo investors: the 2013 Data Breach (which impacted the personal

11  information of three billion Yahoo user accounts); the 2014 Data Breach, which affected the data

12  of 500 million user accounts; and two additional data breaches in 2015 and 2016, which affected

13  approximately 32 million Yahoo user accounts.

14  **III.     SUMMARY OF THE LITIGATION AND SETTLEMENT**

15          **A.      Procedural History**

16          The Action was commenced with a complaint filed on January 24, 2017 in this District,

17  asserting securities fraud claims under Sections 10(b) and 20(a) of the Exchange Act and Rule

18  10b-5 promulgated thereunder, against Yahoo, Mayer, and Goldman, on behalf of all persons

19  who purchased or otherwise acquired common shares of Yahoo between November 12, 2013 and

20  December 14, 2016, inclusive.  (ECF No. 1.)  A second action asserting securities fraud claims

21  against the same defendants was filed on March 21, 2017.

22          On March 27, 2017, Maher and Sutton View moved pursuant to Section 21D(a)(3)(B) of

23  the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, and Fed. R. Civ. P.

24  Rule 42, to consolidate the two above-referenced actions, to appoint Maher and Sutton View as

25  Lead Plaintiffs and to approve Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") and

26  Glancy Prongay & Murray LLP ("Glancy") as Co-Lead Counsel for the Class.  (ECF No. 12.)

27          On April 24, 2017, this Court consolidated the cases under Master File No. 17-CV-

28  00373, captioned the case *In re Yahoo! Inc. Securities Litigation*, appointed Maher and Sutton

View as Lead Plaintiffs and approved their selection of Pomerantz and Glancy as co-Lead Counsel in the consolidated action.  (ECF No. 19.)

On April 26, 2017, at the initial case management conference, the Court set a deadline for the filing of a consolidated complaint and a briefing schedule on Defendants' then contemplated motion to dismiss and scheduled a hearing on the motion to dismiss for September 7, 2017. (ECF No. 24.)

On June 7, 2017, Plaintiffs filed the First Amended Complaint, removing Goldman as a defendant and adding Bell and Stamos as Defendants.  The First Amended Complaint asserted securities fraud claims on behalf of Plaintiffs and a class consisting of all persons other than Defendants who purchased or otherwise acquired Yahoo securities between April 30, 2013 and December 14, 2016.  (ECF No. 28.)

On July 28, 2017, Defendants Yahoo and Mayer filed a motion to dismiss (ECF No. 46), to which Defendants Bell and Stamos filed joinders (ECF Nos. 48-49).  The motion to dismiss was fully briefed by September 21, 2017.  (ECF Nos. 56-57.)

Through a Joint Unopposed Motion to Continue the Motion to Dismiss Hearing filed with the Court on October 13, 2017, the parties informed the Court that:

> On October 10, 2017, the parties participated in a mediation session with the Honorable Daniel Weinstein of JAMS.  At the mediation session, sufficient progress was made that the parties believe deferring a hearing and ruling on Defendants' pending motion to dismiss the First Amended Complaint would benefit the mediation process and increase the likelihood that a settlement can be reached in this matter.  Judge Weinstein agrees that deferring decision on the pending motion to dismiss would benefit the mediation process.  The parties jointly request that the Court continue the hearing on Defendants' motion to dismiss, currently scheduled for October 19, 2017, to a date on or after November 20, 2017, that is convenient to the Court, and jointly request that the Court defer ruling on the motion to dismiss until a date on or after November 20, 2017.

(ECF No. 59.)   The Court granted the parties' Joint Unopposed Motion and continued the hearing on Defendants' motion to dismiss the First Amendment Complaint to November 30, 2017.  (ECF No. 60.)

On November 1, 2017, the parties submitted a Joint Case Management Statement informing the Court that:

> The Parties' settlement discussions are continuing.  The Parties and the Mediator believe that further discussions may result in a settlement.  Accordingly, the

1

2

> Parties hereby jointly request that the Case Management Conference currently set for November 8, 2017, be continued until a date convenient to the Court following the November 30, 2017 hearing on Defendants' motion to dismiss. The Parties will notify the Court promptly in the event that a settlement is reached.

3  (ECF No. 61.)

4       On November 20, 2017, the Court ordered the parties to file a joint settlement status

5  update by November 22, 2017.  (ECF No. 63.)  On November 21, 2017, the parties filed a Joint

6  Settlement Status Update and Joint Unopposed Motion to Continue the Hearing Date of

7  Defendants' Motion to Dismiss.  (ECF No. 64.)  The parties informed the Court that:

8

9

10

11

> The parties have continued their negotiations and, with the ongoing support and assistance of Judge Weinstein, have made substantial further progress.  Although no settlement has been reached at this point, the parties are optimistic that a settlement can be achieved with additional time and effort.  Therefore, the parties request that the Court continue the hearing on Defendants' motion to dismiss, and not rule on the motion, until a date on or after December 18, 2017, at the Court's convenience.

12  (*Id.*)

13       On November 22, 2017, the Court entered an Order Denying Without Prejudice the

14  Motion to Dismiss and Motion for Joinder as Moot, advising the parties that it "will not continue

15  the motion to dismiss hearing indefinitely" and setting a modified schedule as a result of

16  "sufficiently plead circumstances" to warrant granting Plaintiffs leave to amend their First

17  Amended Complaint in light of Verizon's disclosure on October 3, 2017, that "the 2013 data

18  breach affected an additional two billion Yahoo user accounts."  (ECF No. 65.)  The Court set a

19  deadline of February 2, 2018, for Plaintiffs to file a Second Amended Class Action Complaint.

20  *Id.*  On January 10, 2018, the Court ordered the parties to file a joint settlement status update by

21  January 16, 2018.  (ECF No. 66.)

22       On January 16, 2018, the parties filed a Joint Settlement Status Update, informing the

23  Court that Plaintiffs Sutton View and Talukder, and all Defendants "are negotiating, and believe

24  they are close to reaching, a settlement agreement, subject to formal documentation and court

25  approval."  (ECF No. 67.)  On January 23, 2018, the parties executed a Memorandum of

26  Understanding ("MOU"), which memorialized the terms and conditions of a settlement in

27  principle for $80 million.  On the same day, the parties filed another Joint Settlement Status

28  Update, informing the Court that Plaintiffs Sutton View and Talukder and all Defendants "have

reached a settlement agreement, subject to formal documentation and Court approval," and that "Plaintiff Ben Maher has not agreed to the settlement at this time." (ECF No. 68.) The parties to the settlement also informed the Court that they "plan to file a motion with the Court no later than March 2, 2018, attaching a stipulation of settlement and requesting that the Court enter a preliminary approval order certifying a settlement class, approving the form of notice to the class, granting preliminary approval of the settlement, and setting a date for a hearing on final approval of the settlement." *Id*. Given that agreement, the parties to the settlement requested that the Court vacate the deadlines set by the Court in its November 22, 2017, Order Denying the Motion to Dismiss and Motion for Joinder as Moot. *Id*. The Court denied that request on January 24, 2018. (ECF No. 69.) On February 2, 2018, Plaintiffs filed their Second Amended Class Action Complaint. (ECF No. 70.) Defendants are filing their motion to dismiss that complaint on March 2, 2018.

### B. Settlement Discussions, the Settlement Stipulation, and Due Diligence

On October 10, 2017, the parties participated in an all-day mediation session led by Hon. Daniel Weinstein (Ret.), a respected and experienced mediator with JAMS. Before the mediation session, the parties prepared and exchanged extensive mediation statements outlining their settlement positions. At the mediation, the parties made substantial progress toward reaching a settlement, but did not reach an agreement. Over the next three months, Judge Weinstein conducted further discussions with the parties, which included many hours of telephonic discussions. Those discussions culminated in the settlement MOU, fully executed on January 23, 2018.

Following the execution of the settlement MOU, the parties began to negotiate and document all terms and conditions of a settlement and prepare all related documentation. The Stipulation memorializes the agreement between the parties to fully and finally settle the Action and, among other things, fully releases all Released Claims against all Defendants and the Released Parties with prejudice in return for $80 million cash.

As provided in the Stipulation, the parties have agreed to a process of informal discovery that would allow Lead Counsel to conduct due diligence and determine that the proposed

1    Settlement is fair, reasonable, and adequate.  To this end, the parties negotiated and agreed on the

2    scope of Defendants' confirmatory discovery, which was expressly made a term of the MOU.

3    Between January 23, 2018 and February 16, 2018, Altaba made a substantial document

4    production to Plaintiffs.  Lead Counsel has reviewed a significant portion of these documents

5    and anticipates that confirmatory discovery will be substantially complete by the preliminary

6    approval hearing date on May 3, 2018.

7    **IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

8         At the Settlement Hearing, the Court will have before it extensive papers submitted in

9    support of approval of the proposed Settlement and will be asked to make a determination as to

10   whether the Settlement is fair, reasonable, and adequate under all of the circumstances

11   surrounding the litigation of this Action.  At this juncture, however, the Settling Parties request

12   only preliminary approval of the Settlement.

13        **A.    Standards for Preliminary Approval**

14        Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of

15   claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class

16   may be settled . . . only with the court's approval.").  "In deciding whether to approve a proposed

17   settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly

18   where complex class action litigation is concerned.'"  *In re Heritage Bond Litig.*, No. 02-ML-

19   1475 DT, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005); *see also Officers for*

20   *Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

21   1982).  "[T]here is an overriding public interest in settling and quieting litigation," which is

22   "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

23   Cir. 1976); *see also Browning v. Yahoo! Inc.,* No. C04-01463 HRL, 2007 U.S. Dist. LEXIS

24   86266, at *39 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement

25   of class action suits").  The Supreme Court has cautioned that in reviewing a proposed class

26   settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."

27   *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

28        Approval of a class action settlement requires two stages of judicial approval:  (i)

preliminary approval, followed by the distribution of notice to the class, and (ii) final approval. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages."); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). "In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . and authorize[s] notice to be given to the Class." *Murillo*, 266 F.R.D. at 473 (alterations in original) (internal quotations omitted).

At this initial preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval." *Williams v. Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *15-*16 (S.D. Cal. Mar. 4, 2010); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008). In considering whether to grant preliminary approval of a proposed class action settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Court need not make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable, and adequate. Rather, that evaluation is made only at the final approval stage, after notice of the proposed Settlement has been given to the Settlement Class Members and those Settlement Class Members have had an opportunity both to voice their views of the proposed Settlement and to exclude themselves from the Settlement Class if they so choose. *See Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-*15 ("Given that some … factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'").

By their motion, Plaintiffs respectfully request that the Court find that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," and accordingly "direct that the notice be given to the class members of a formal fairness hearing." *Young v. Polo Retail,*

1   *LLC,* No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-*13 (N.D. Cal. Oct. 25, 2006).

2   **B.    The Proposed Settlement Merits a Presumption of Fairness**

3          "To determine whether preliminary approval is appropriate, the settlement need only be

4   *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on

5   Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v.*

6   *Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (alteration in original) (cited in *Deaver*

7   *v. Compass Bank*, No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 111170, at *20 (N.D. Cal. Aug.

8   21, 2015)).  Accordingly:

9          If the preliminary evaluation of the proposed settlement does not disclose grounds
10         to doubt its fairness or other obvious deficiencies, such as unduly preferential
           treatment of class representatives or of segments of the class, or excessive
11         compensation for attorneys, and appears to fall within the range of possible
           approval, the court should direct that notice under Rule 23(e) be given to the class
12         members of a formal fairness hearing, at which arguments and evidence may be
           presented in support of and in opposition to the settlement.

13  *Manual for Complex Litigation (Third)* § 30.41 (1995).

14         Here, the proposed Settlement merits a presumption of fairness because it has no obvious

15  deficiencies and the settlement recovery falls within the range of possible approval.  Indeed, it is

16  both procedurally and substantively fair—it is the product of arm's-length negotiations among

17  well-informed and experienced counsel aided by an experienced mediator, and it provides the

18  Settlement Class with an excellent recovery.  *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451

19  (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the

20  court's determination of the reasonableness of the settlement.").

21         As aforementioned, settlement negotiations proceeded over a period of several months,

22  involving mediation led by an internationally respected mediator, Hon. Daniel Weinstein, on

23  whom both Plaintiffs and Defendants' counsel relied for judicious and impartial evaluation of

24  their respective positions.  *See In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144

25  (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (finding "no reason to doubt that the

26  Settlement is procedurally fair" when "negotiations were conducted with the assistance of Judge

27  Weinstein, a highly regarded mediator with extensive experience in securities litigation");

28  *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012)

(approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-respected mediator").   In advance of the mediation session, the parties exchanged detailed mediation statements addressing liability and damages.   During the mediation session, both sides made adversarial presentations about the merits of Plaintiffs' claims and the defenses to those claims.   The negotiations were at all times adversarial, and they eventually produced a result that the parties believe to be in their respective best interests.   The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr. 29, 2011) (finding the fact that the settlement was negotiated during a mediation with an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

In addition, the Settlement has no obvious deficiencies. It provides a substantial non-reversionary cash recovery to the Settlement Class, and there is no preferential treatment to Plaintiffs or any other Settlement Class Members.   The proposed Plan of Allocation (as set forth in the Notice) was developed by a damages expert in consultation with Class Counsel and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid claims.

**C.      Proposed Settlement Recovery Falls Within the Range of Possible Approval**

The Settlement also fares well in light of the applicable factors used in evaluating class-action settlements for final approval. These factors include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.

2004).  The factors are non-exclusive and not all need be shown. *Id.* at 576 n.7.  In fact, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms.*, 221 F.R.D. at 525-26; *see, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1.    Amount Offered Compared to the Potential Total Recovery

Employing an aggressive damages methodology, Plaintiffs' damages consultant has estimated that the maximum recoverable damages in this case are $764.1 million using a multi-trader model.[4]   The analysis would assume that 100 percent of the company specific returns used to measure price inflation (deflation) were caused by the revelation of alleged fraud on September 22, 2016, September 23, 2016, and December 15, 2016.  In that regard, the company specific returns on those dates are not disentangled from any non-fraud related company specific information that might have been disclosed contemporaneously.  Using the first-in, first out institutional investor model ("FIFO"), estimated damages are approximately $348.2 million, while using the last in, first out institutional investor model ("LIFO"), estimated damages are approximately $234.2 million.

Plaintiffs contend that a significant part of the price decline following each disclosure was attributable to the disclosure of new information correcting earlier misrepresentations, and thus recoverable as damages.  However, Plaintiffs recognize and must account for the fact that some portion of these price declines was attributable to confounding information.  Indeed, Defendants contended that recoverable damages, if any, are limited to a range of $15 million to $160 million.  For example, Defendants contended that there will be no evidence that any Yahoo executive was aware of the 2013 Data Breach, hence elimination of the 2013 Data Breach results

---

[4] The proportional 80/20 Multi-Trader Model posits two active traders (*e.g.*, institutions and individuals) with different holdings and propensities to trade.  The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (*i.e.*, they hold 80% of shares available, but trade 20% of the volume) and a small set of "fast" traders (*i.e.*, they hold 20% of shares available, but trade 80% of the volume).  This model has been advocated by representative authors from Cornerstone Research, an economic consulting firm frequently engaged by defendants in class action securities litigation.  *See* W. Beaver, *et al.*, *Stock Trading Behavior and Damage Estimation in Securities Cases*, Cornerstone Research Working Paper (1993).

in a substantial shortening of the class period.  Defendants also argued that the September 23, 2016 price decline should not be included in estimating damages because, in an efficient market, the price decline on the prior date (*i.e.*, September 22, 2016) fully accounted for the relevant corrective disclosure.  In other words, Defendants argued that, in an efficient market, a two-day price decline window is improper because the news revealed is reflected in the stock prices almost immediately.   Eliminating the September 23, 2016, price decline and employing corrective disclosure dates of September 22, 2016 and December 15, 2016 only, Plaintiffs' damages consultant has estimated that the maximum recoverable damages are $558.1 million using a multi-trader model, $251.4 million using an institutional trading model under FIFO, and $175.6 million using an institutional trading model under LIFO.

As noted above, using each of these models, the Settlement represents an excellent recovery for the Settlement Class:

- using the multi-trader model, Plaintiffs estimate that the Settlement returns approximately (i) 14% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 10% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level;

- using the FIFO Institutional Trading Model, Plaintiffs estimate that the Settlement returns approximately (i) 32% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 23% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level;

- using the LIFO Institutional Trading Model, Plaintiffs estimate that the Settlement returns approximately (i) 46% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 34% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.

Each of these results is well above the median settlement for similar securities class actions.  *See, e.g.*, *Securities Class Action Settlement 2016 Review and Analysis*, *supra,* at 7-8 (noting that in 2016, securities settlements overall returned a median of 2.5% of damages, with 3.0% where damages are between $250-$499 million);  *Securities Class Action Settlements 2013 Review and Analysis*, *supra*, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million); *In re*

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *27-*28 (average recovery between 2% to 3% of maximum damages)); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case"). Accordingly, the $80 million Settlement Amount easily falls "within the range of possible approval" and warrants preliminary approval.

### 2. Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, the "risk, expense, complexity, and likely duration of further litigation" were substantial. Securities-fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g., In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2012 U.S. Dist. LEXIS 21732, at *19 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012).

Plaintiffs believe their case was strong with respect to falsity and scienter, two elements of Plaintiffs' 10(b) claims. Scienter is, however, notoriously difficult to prove, however, in securities-fraud cases. *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Plaintiffs also would have encountered other difficulties. For example, with respect to class certification, Defendants likely would have argued that the alleged misstatements had no impact on Yahoo's stock price. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398 (2014). Moreover, with respect to

1    the element of loss causation, disentangling the market's reaction to various pieces of corrective

2    disclosures would have required expert testimony based on methodologies that are highly

3    contested among economists, resulting in an unpredictable and expensive "battle of the experts."

4    *See, e.g.*, *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408,

5    at *17 (N.D. Cal. Nov. 20, 2015) (finding that this weighed in favor of settlement approval); *In*

6    *re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) (finding no error in district court's

7    determination "that establishing damages at trial would lead to a 'battle of experts,' with each

8    side presenting its figures to the jury and with no guarantee whom the jury would believe").  At

9    the very least, these arguments were likely to impose significant limits on potential damages.

10   And not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it

11   would inevitably be delayed by years.

12        Accordingly, the immediacy and certainty of an $80 million recovery is of significant

13   benefit to the Class and strongly supports granting preliminary approval.

14        **3.**    **The Extent of Discovery Completed, the Stage of the Proceedings, and the Experience and Views of Counsel**

15        Co-Lead Counsel Pomerantz and Glancy are highly experienced in litigating federal

16   securities class action cases.   Counsel's informed determination, in harmony with the

17   instrumental guidance of Judge Weinstein as an experienced mediator that the Settlement is in

18   the best interest of the Settlement Class, should be afforded significant weight.  *See Nat'l Rural*

19   *Telecomms.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel . .

20   . because 'parties represented by competent counsel are better positioned than courts to produce

21   a settlement that fairly reflects each party's expected outcome in the litigation'") (citing *In re*

22   *Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) and *In re Pac. Enters.*

23   *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also Kirkorian*, 695 F. Supp. at 451 ("The

24   recommendation of experienced counsel carries significant weight in the court's determination of

25   the reasonableness of the settlement.").

26        Although there has been no formal discovery to date, "formal discovery is not a

27   necessary ticket to the bargaining table where the parties have sufficient information to make an

28   informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

Cir. 2000) (internal quotation marks omitted).  Such is the case here.  Lead Counsel conducted an extensive and thorough factual investigation, including obtaining statements from confidential witnesses who worked at Yahoo during the Class Period.  Lead Counsel also reviewed, among other things: Defendants' SEC filings, press releases, and other public statements; transcripts of Yahoo's earnings calls and investor conferences; public documents; federal indictments; articles and analyst reports regarding Yahoo; and documents obtained in the shareholder class action litigation against Yahoo, including documents produced in response to a demand for corporate books and records pursuant to Section 220 of the Delaware General Corporations Law and in response to expedited discovery.  In addition, Lead Counsel opposed Defendants' motion to dismiss, engaged in a mediation process that entailed significant briefing, and prepared the Second Amended Complaint.  Thus, Lead Counsel understands the strengths and weaknesses of Plaintiffs' case and has enough information to recommend that the Court preliminarily approve the Settlement.  Moreover, pursuant to the MOU and for purposes of confirmatory discovery, Altaba has made a substantial document production, of which Lead Counsel has already reviewed a significant portion.  Lead Counsel is continuing to review this production and anticipates that confirmatory discovery will be substantially complete by the preliminary approval hearing date on May 3, 2018.

Accordingly, Lead Counsel's determination that the settlement is in the best interest of the Class is entitled to significant weight in this case.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The preliminary approval process is also utilized to certify a settlement class when a class has not previously been certified by the court.  The Supreme Court recognizes the utility and necessity of certifying settlement classes so long as absent class members' rights are protected. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997).  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23.  *See Hanlon*, 150 F.3d at 1019.

Rule 23 has two sets of requirements for class certification.  First, subsection (a) sets forth four prerequisites, providing that one or more members of a class may sue as representative

parties on behalf of the class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In addition, under the pertinent subdivision of subsection (b) applicable to this case, Rule 23(b)(3) provides that an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the proposed Settlement Class is defined in the Stipulation as all persons who purchased or otherwise acquired Yahoo securities on the open market during the Settlement Class Period. Excluded from the Settlement Class are (i) Defendants and the Individual Defendants' family members, heirs, successors, or assigns; (ii) directors and officers of Altaba and their families; (iii) any entity in which Defendants have a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

Courts have generally found securities claims to be particularly well-suited for class treatment because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. *See Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975). This action is no exception and, as explained below, the proposed Settlement Class satisfies each of the requirements of Rule 23. In support of their contention that proper and sufficient grounds to conditionally certify the class exist under Rule 23(a) and 23(b)(3), Plaintiffs demonstrate the following:

### A.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Classes consisting of 25 members have been held to be large enough to justify certification. *See Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp.

990, 995 (C.D. Cal. 1984). The exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *See In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification[.]"). Courts widely recognize that numerosity is met in securities cases involving nationally traded securities. *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *7-*8 (N.D. Cal. Sept. 15, 1994).

Here, millions of Yahoo shares were traded during the Settlement Class Period. In addition, beneficial holders of Yahoo securities are believed to number in the thousands and are geographically located throughout the United States. Accordingly, joinder of all Settlement Class Members in consolidated individual actions would clearly be impracticable. Hence, the numerosity element is satisfied.

**B.      Commonality – Rule 23(a)(2)**

Rule 23(a)(2) is satisfied where the proposed class representative(s) share at least one question of law or fact with the claims of the prospective class. *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Further, there may be varying fact situations among individual members of the class as long as the claims of the plaintiff and other class members are based on the same legal or remedial theory. *Blackie*, 524 F.2d at 902. Here, questions that are common to the proposed Settlement Class include, among others: (i) whether the Settling Defendants' alleged acts violated the federal securities laws; (ii) whether alleged statements or omissions made by the Settling Defendants to the investing public during the Settlement Class Period misrepresented material facts about Yahoo; (iii) whether the price of Yahoo securities was artificially inflated during the Settlement Class Period; and (iv) whether the Settlement Class Members have sustained damages and the proper measure of such damages. *See also In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 U.S. Dist. LEXIS 48122, at *15-*16 (N.D. Cal. May 12, 2010) (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants' . . . omissions

caused class members to suffer economic losses"). Here, there are common questions of law and fact because the Settling Defendants' alleged misconduct affected all Settlement Class Members in the same manner, *i.e.*, the Settling Defendants' alleged false and misleading statements and omissions allegedly artificially inflated the price of Yahoo securities.

Securities actions raising common questions such as the ones listed above have repeatedly been held to be prime candidates for class certification. In short, because the core complaint of all Settlement Class Members is that they purchased Yahoo securities at artificially inflated prices and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is satisfied. *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of "[defendant's] common stock at artificially inflated prices").

## C.      Typicality – Rule 23(a)(3)

Pursuant to Rule 23(a)(3), a representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. The typicality requirement recognizes that a class representative "with claims typical of the class will, in pursuing and defending his own self-interest in the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted).

The typicality requirement is met if Plaintiffs and each member of the represented group have an interest in prevailing on similar legal claims. Differences in the amount of damages, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).

1    Here, the proposed representatives' and the Settlement Class Members' claims arise from

2    the same alleged conduct by the Settling Defendants.  Plaintiffs Sutton View and Talukder allege

3    that they, like the other Settlement Class Members, purchased Yahoo securities at artificially

4    inflated prices because the Settling Defendants, in violation of the federal securities laws,

5    allegedly issued false and materially misleading statements and/or omissions during the

6    Settlement Class Period.  The proof that the proposed representatives would present to establish

7    their claims would also prove the claims of the rest of the Settlement Class.  Further, neither

8    proposed representative is subject to any unique defenses that would make it an atypical

9    Settlement Class Member.

10        **D.    Adequacy – Rule 23(a)(4)**

11    Rule 23(a)(4) adequacy requires that class representatives must be capable of fairly and

12    adequately protecting the interests of absent class members. This requirement has traditionally

13    entailed a two-pronged determination: first, that the interests of the proposed representatives will

14    not conflict with the interests of the absent class members; second, that counsel chosen by the

15    representative parties is qualified, experienced and able to vigorously conduct the proposed

16    litigation.  To satisfy this requirement, the proposed class representative must be free of interests

17    that are antagonistic to the other members of the class, and counsel representing the class must

18    be qualified, experienced, and capable of conducting the litigation.  *Lerwill v. Inflight Motion*

19    *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.  Further, pursuant to

20    Rule 23(g), adequacy of class counsel is now considered separately from the determination of the

21    adequacy of the class representatives.  Both prongs of the adequacy requirement are satisfied

22    here.

23    The proposed Settlement Class representatives purchased Yahoo securities during the

24    Settlement Class Period and have no interests antagonistic to those of the members of the

25    proposed Settlement Class.  The proposed representatives seek to recover from Defendants, on

26    their own behalf and on behalf of all members of the Settlement Class, damages allegedly caused

27    by Defendants' unlawful conduct.  The representatives' interests are therefore congruent with

28    and not antagonistic to other Settlement Class Members' interests.

Rule 23(g) requires a court to assess the adequacy of proposed class counsel.  To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Aarons v. BMW of N. Am., LLC,* No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442, at *20-*21 (C.D. Cal. Apr. 29, 2014) (final approval).

As set forth above, Lead Counsel have drafted three complaints, interviewed confidential witnesses, uncovered publicly available materials including unredacted Yahoo documents that would be presented in evidence at trial, and have negotiated zealously with Defendants' counsel under and alongside the guidance of Judge Weinstein.  These activities by themselves demonstrate a significant commitment of resources and human capital.  Moreover, Lead Counsel's firm resumes demonstrate that they have extensive experience in handling complex securities class actions and that Lead Counsel are amply capable of devoting necessary resources to successfully resolve this litigation for the benefit of the proposed Settlement Class.  *See* ECF Nos. 13-4 & 13-5.

### E.    Predominance and Superiority -- Rule 23(b)(3)

In addition to the four requirements of Rule 23(a), a class must also satisfy one of the three requirements of Rule 23(b). Here, little question exists that a class action is superior to other available methods for litigation of the claims asserted here, as required by Rule 23(b)(3). To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to a class representative.  Generally, common questions will predominate if the common issue constitutes a significant part of each of the class members' individual cases.  Predominance exists were the class members "have more issues keeping them together than driving them apart." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) (explaining that "questions related to liability" have "primacy" over any theoretical defenses that "only affect certain members of the class.").  Further, "the superiority of class actions in large securities fraud [matters] is well recognized." *In re Intelcom*

*Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996).  The predominance test is met in this action: the same set of operative facts applies to each Settlement Class Member.  "The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct."  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1993 U.S. Dist. LEXIS 21272, at *16-*17 (C.D. Cal. Feb. 26, 1993).  Further, the fact that a class action is the superior method to efficiently and effectively pursue the claims alleged here is shown by the fact that if Plaintiffs Sutton View and Talukder, and each of the Settlement Class Members were to bring individual actions, they each would be required to prove the same wrongdoing by the Settling Defendants to establish liability.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (class actions are a particularly appropriate and desirable means to resolve claims based on securities laws).

By reason of the foregoing, all of the pertinent requirements of Rule 23(a) and (b)(3) are satisfied.  Accordingly, the Court should certify the proposed Settlement Class for settlement purposes only and appoint Co-Lead Plaintiff Sutton View and Named Plaintiff Talukder as the class representatives.

## VI.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The parties have negotiated the form of a Notice of Proposed Class Action Settlement (the "Notice") to be disseminated to the Settlement Class to notify them of the terms of the Settlement and of their rights in connection therewith, as well as a Summary Notice of Proposed Class-Action Settlement (the "Publication Notice"), which will be published in a national business publication or via a national business newswire.  The Notice will also be posted on the Settlement Administrator's website.[5]  The Notice and Publication Notice have been drafted to comply with the provisions of the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).  The Notice provides detailed information concerning: (1) the proposed Settlement; (2) the nature, history, and

---

[5] The Notice, Publication Notice, and Proof of Claim are attached to the Stipulation as Exhibits B, C, and D.  These documents currently contain blanks for dates to be ordered by the Court, which will be filled in with the appropriate dates before dissemination.

progress of the Action; (3) the date of the Final Approval Hearing; (4) the proposed Plan of Allocation; (5) the fees and expenses to be sought by Plaintiffs' Counsel; (6) the rights of Settlement Class Members, including the procedures for filing a Proof of Claim, requesting exclusion from the Settlement Class, or objecting to the Settlement or Plan of Allocation or request for fees and expenses; and (7) how to contact Lead Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

Under the proposed Preliminary Approval Order, the Settlement Administrator will: (1) mail the Notice and Proof of Claim to all purchasers of Yahoo securities during the Settlement Class Period, (2) post the Notice and Proof of Claim to the Settlement Administrator's website, and (3) cause the Publication Notice to be published to be published in a national business publication or via a national business newswire. The Settlement Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms who held Yahoo stock. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Settlement Administrator with their names and addresses so the Settlement Administrator can mail them the Notice directly.

Lead Counsel believes that providing the Notice by mail, along with publishing the Publication Notice in a national business publication or via a national business newswire and posting the Notice and Proof of Claim on the Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice plans approved by courts in other class actions and satisfies the requirements of Rule 23 and due process. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp.*, 2015 U.S. Dist. LEXIS 157408, at *13 (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient). Accordingly, Plaintiffs respectfully request that the Court find that the Notice, Publication Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.    PROPOSED SCHEDULE

Plaintiffs respectfully propose the following schedule of events leading to the Final Approval Hearing as set forth in the Preliminary Approval Order in the form filed with the Court:

| Event | Deadline for Compliance |
|---|---|
| Deadline for mailing Notice, publication of Publication Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final Settlement approval and Fee and Expense Award | Thirty-five (35) calendar days before the Settlement Hearing |
| Objection Deadline | Twenty-one (21) calendar days before the Settlement Hearing |
| Opt-Out Deadline | Twenty-one (21) calendar days before the Settlement Hearing |
| Deadline for Plaintiffs to file reply papers in support of Settlement and Fee and Expense Award and in response to any objections | Seven (7) calendar days before the Settlement Hearing |
| Deadline to submit Proofs of Claim | Five (5) calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, but at least 120 calendar days after entry of the Preliminary Approval Order |

## <u>CONCLUSION</u>

The Court should preliminarily approve the proposed Settlement by issuing the Preliminary Approval Order submitted herewith, certify the proposed Settlement Class for settlement purposes only, approve the proposed form and method of providing notice to the proposed Settlement Class, and set the dates for a Settlement Hearing and related deadlines.

Dated:  March 2, 2018

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Joshua L. Crowell*
Joshua L. Crowell
Jennifer M. Leinbach
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
jcrowell@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Emma Gilmore
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
mgrunfeld@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile  (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Plaintiffs*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On March 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2018, at Los Angeles, California.

*s/ Joshua L. Crowell*
Joshua L. Crowell

# Mailing Information for a Case 5:17-cv-00373-LHK In Re Yahoo! Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Edward Andrew Bayley**
  ebayley@keker.com,laure-mandin-6675@ecf.pacerpro.com,lmandin@keker.com,efiling@keker.com,ed-bayley-0392@ecf.pacerpro.com

- **Martha A Boersch**
  mboersch@boerschshapiro.com,lkollios@boerschshapiro.com,rvorkoeper@boerschshapiro.com,frizvi@boerschshapiro.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com,dmanning@glancylaw.com

- **Jordan Eth**
  jeth@mofo.com,jordan-eth-3756@ecf.pacerpro.com,tkhadoo@mofo.com,trina-khadoo-5939@ecf.pacerpro.com

- **Emma Gilmore**
  egilmore@pomlaw.com

- **Jo W. Golub**
  jgolub@keker.com,mvillagra@keker.com,julie-selby-5502@ecf.pacerpro.com,sandy-giminez-6735@ecf.pacerpro.com,efiling@keker.com,jselby@keker.com,molly-villagra-5677@ecf.pacerpro.com,SHarmison@keker.com,jah@keker.com,jo-golub-8129@ecf.pacerpro.com

- **Michael Grunfeld**
  mgrunfeld@pomlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Adam G. Kurtz**
  agkurtz@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,magdalena-blackmer-3352@ecf.pacerpro.com,judson-lobdell-6493@ecf.pacerpro.com,mblackmer@mofo.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,bmurray@glancylaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Jennifer                    Leinbach

```
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
```