**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Emma Gilmore (*pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
egilmore@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Joshua L. Crowell (295411)
Vahe Mesropyan (307244)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcrowell@glancylaw.com

*Lead Counsel for Plaintiffs*
*- additional counsel on signature page -*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE YAHOO! INC. SECURITIES LITIGATION | Case No. 5:17-cv-00373-LHK |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION** |
| | Date:     September 6, 2018<br>Time:    1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 6, 2018, at 1:30 p.m. (or as soon thereafter as the matter may be heard), at a Settlement Hearing at the United States District Court for the Northern District of California, in the Courtroom of the Honorable Lucy H. Koh, located at 280 South 1st Street, San Jose, California, Class Representatives Ben Maher, Sutton View Partners LP ("Sutton View") and Nafiz Talukder will move the Court for an order (1) granting final approval to the settlement set forth in the Stipulation and Agreement of Settlement dated March 2, 2018 (ECF No. 74) (the "Stipulation"), (2) approving the Plan of Allocation[1] as fair, reasonable and adequate, (3) determining that the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e), (4) certifying the Settlement Class, and (5) entering the proposed order filed herewith and dismissing the Action with prejudice.

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Stipulation and exhibits thereto; the joint declaration of Jeremy A. Lieberman and Joshua L. Crowell ("Joint Decl."), the declarations of Pomerantz LLP ("Pomerantz") ("Lieberman Decl.") and Glancy Prongay & Murray LLP ("GPM") ("Crowell Decl."), the declarations of Plaintiffs Ben Maher ("Maher Decl."), Sutton View Partners LP ("Winston Decl."), and Nafiz Talukder; the declaration of Claims Administrator JND ("Cormio Decl."); Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards for Plaintiffs ("Fee & Expense Motion"), filed herewith; the Court's file in this Action; and any other argument or evidence that Co-Lead Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

The Settlement provides a total cash Settlement Amount of eighty million dollars ($80,000,000.00). To date, despite the mailing of 773,140 notices, no objections to the

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning herein as set forth in the Stipulation.

Settlement have been filed and only thirteen   Settlement Class Members have requested exclusion.  *See* Cormio Decl. ¶¶ 10, 14 (attached as Joint Decl. Ex. 1).   The deadline for filing objections is August 16, 2018.  To the extent any objections are filed, Lead Counsel will respond to each such filing by August 23, 2018.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 17-CV-00373 (LHK)

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate.

2.  Whether the Plan of Allocation should be approved as fair, reasonable, and adequate.

3.  Whether the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e).

4.  Whether the Court should grant final certification to the Settlement Class.

5.  Whether the Court should enter the proposed Order and Final Judgment and dismiss the Action with prejudice.

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    The Litigation, Settlement Negotiations and Due Diligence ..................... 3

    B.    The Settlement ........................................................................... 6

    C.    Preliminary Approval and Dissemination of Notice ................................ 7

ARGUMENT ...................................................................................................... 8

  I    The Settlement Warrants Final Approval ............................................. 8

    A.    Standards for Judicial Approval of Class-Action Settlements ................... 8

    B.    The Settlement Process Was Procedurally Fair ...................................... 8

    C.    The *Hanlon* Factors Confirm That the Settlement Is Fair, Reasonable, and Adequate ............................................................................................ 10

        i.    The Overall Strength Of Plaintiffs' Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation ............. 10

        ii.    The Risks Of Maintaining Class Action Status Throughout Trial 12

        iii.    The Amount Obtained In The Settlement ..................................... 13

        iv.    The Extent Of Discovery Completed And The Stage Of The Proceedings ................................................................................. 17

        v.    Experienced Counsel Negotiated The Settlement In Good Faith And At Arm's-Length And Believe It Is Fair, Reasonable, And Adequate ..................................................................................... 18

        vi.    The Absence Of A Governmental Participant ............................. 19

        vii.    The Positive Reaction Of The Settlement Class ........................... 19

  II    Notice to the Settlement Class Satisfied Rule 23 and Due Process ..................... 20

  III    The Plan of Allocation Is Fair, Reasonable, and Adequate ................................. 21

  IV    Settlement Class Certification Remains Warranted ............................................. 22

    A.    The Settlement Class Satisfies Rule 23(a) ................................. 23

    B.    The Settlement Class Satisfies Rule 23(b)(3) ........................................ 24

CONCLUSION ................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aarons v. BMW of N. Am., LLC*,
5
    No. CV 11-7667 PSG, 2014 U.S. Dist. LEXIS 118442
    (C.D. Cal. Apr. 29, 2014) ....................................................................................................29
6

*Aarons v. BMW of North America, LLC*,
7
    No. 11-cv-7667, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ..........................................12

8

*Alfus v. Pyramid Tech. Corp.*,
9
    764 F. Supp. 598 (N.D. Cal. 1991) .....................................................................................24

10

*Amchem Prods., Inc., v. Windsor*,
    521 U.S. 591 (1997).............................................................................................................22
11

*Blackie v. Barrack*,
12
    524 F.2d 891 (9th Cir. 1975) ..............................................................................................23

13

*Carson v. Am. Brands*,
14
    450 U.S. 79 (1981)................................................................................................................8

15

*Churchill Vill. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................................................10
16

*City of Detroit v. Grinnell Corp.*,
17
    495 F.2d 448 (2d Cir. 1974)................................................................................................20

18

*D'Amato v. Deutsche Bank*,
19
    236 F.3d 78 (2d Cir. 2001)....................................................................................................9

20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................................................21
21

*Eisenberg v. Gagnon*,
22
    766 F.2d 770 (3d Cir. 1985)................................................................................................25

23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
24
    134 S.Ct. 2398 (2014).....................................................................................................11, 12

25

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... *passim*
26

*Hayes v. MagnaChip Semiconductor Corp.*,
27
    No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120
    (N.D. Cal. Nov. 21, 2016).....................................................................................................11
28

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011)..................................................................24

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..........................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .......................................................................10

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408
  (N.D. Cal. Nov. 20, 2015)............................................................................11

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015)..............21

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..........................................................................11

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................25

*In re Critical Path, Inc. Sec. Litig.*,
  No. 01-cv-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ..............21

*In re Cylink Sec. Litig.*,
  274 F. Supp. 2d 1109 (N.D. Cal. 2003) ........................................................10

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ..................................................................25

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  MDL No. 901, 1993 U.S. Dist. LEXIS 21272 (C.D. Cal. Feb. 26, 1993)..............25

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........... *passim*

*In re Intelcom Grp., Inc. Sec. Litig.*,
  169 F.R.D. 142 (D. Colo. 1996) ...................................................................25

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009)..............................................................24-25

*In re Marsh & McLennan Cos. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................9

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .......................................................................19

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ...................................................................20

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ....................................................................18

*In re Rambus Inc. Derivative Litig.,*
   No. 06-cv-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ...............23

*In re Sumitomo Cooper Litig.,*
   189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................14

*In re Syncor ERISA Litig.,*
   516 F.3d 1095 (9th Cir. 2008) ...................................................................8

*In re UTStarcom Sec. Litig.,*
   No. 04-cv-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ...............23,24

*In re VeriSign, Inc. Sec. Litig.,*
   No. 02-cv-02270-JW, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ....................24

*In re Vivendi Universal, S.A., Sec. Litig.,*
   No. 02 Civ. 5571 (RJH), 2012 U.S. Dist. LEXIS 21732 (S.D.N.Y. Feb. 6,
   2012), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012) .....................11

*In re Wireless Facilities, Inc. Sec. Litig.,*
   253 F.R.D. 630 (S.D. Cal. 2008) ...............................................................23

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   N.D. Cal. No. 16-MD-02752-LHK, 2018 U.S. Dist. LEXIS 40338.......................11

*Kirkorian v. Borelli,*
   695 F. Supp. 446 (N.D. Cal. 1988) .............................................................9

*Lane v. Facebook, Inc.,*
   696 F.3d 811 (9th Cir. 2012) ...................................................................10

*Lerwill v. Inflight Motion Pictures, Inc.,*
   582 F.2d 507 (9th Cir. 1978) ...................................................................24

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) ...................................................................18

*Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ...............................................................13, 17

*Moore v. Verizon Commc'ns Inc.*,
    No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)....................................18

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................18, 20

*Nguyen v. Radient Pharms. Corp.*,
    No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014)...................................21

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009) ...........................................................12

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................8, 13, 16

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ..............................................................................21

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................8, 19

*Silverman v. Motorola, Inc.*,
    No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) .................................10

*Yamner v. Boich*,
    No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
    (N.D. Cal. Sept. 15, 1994) ........................................................................................23

**Statutes**

8 Del. C. § 220 .................................................................................................................5

15 U.S.C. § 77z-1(a)(7)...................................................................................................24

15 U.S.C. § 78u-4(a) ...................................................................................................4, 24

Securities Act of 1933 § 8a.............................................................................................15

Securities Exchange Act of 1934 § 21c .........................................................................15

Securities Litigation Reform Act of 1995.........................................................................3

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Fed. R. Civ. P. 42 ..............................................................................................................4

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements 2013 Review and Anaylsis* ...................................................................................................................16

2 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002).............................8

*In the Matter of Altaba, Inc., f/d/b/a Yahoo!, Inc.*, SEC Order April 24, 2018 ...............................4

Making Findings, and Imposing a Cease-And-Desist Order, Administrative Proceeding File No. 3-18448 ..................................................15

W. Beaver, *et al.*, *Stock Trading Behavior and Damage Estimation in Securities Cases* .......................................................................................................................14

**INTRODUCTION**

Plaintiffs Ben Maher, Sutton View Partners LP ("Sutton View",) and Nafiz Talukder, on behalf of themselves and the Settlement Class, are pleased to present, for the Court's approval, a $80 million cash settlement resolving all claims in this Action (the "Settlement"), under the terms set forth in the Stipulation and Agreement of Settlement dated March 2, 2018 (ECF No. 74) (the "Stipulation"). This Settlement is not merely fair, reasonable, and adequate, but is an outstanding result. It has been hailed by commentators as "*the first of its kind––a milestone shareholder settlement related to a data breach*," a "*major win*" that extracted a "*hefty sum*," "*motivat[ing] boards to get started on making real changes*" and "*serv[ing] as a wake-up call for boards*."[2]

As detailed herein, depending on Plaintiffs' ability to prove scienter with respect to the 2013 and 2014 data breaches, the $80 million Settlement provides the Settlement Class with a significant recovery. Specifically, if the Court ruled that (i) Plaintiffs did not adequately allege scienter with respect to the 2013 Breach, and (ii) the stock price drop on September 23, 2016 cannot be attributed to disclosures occurring on the previous day, then the maximum recoverable damages would be $134.5 million. Joint Decl. ¶ 51. Under this highly plausible scenario, the Settlement provides a recovery of 59.5%—an excellent result. Under other plausible damages scenarios, the Settlement provides a recovery of up to 90% of recognizable losses. *See* Joint Decl. ¶ 53. Each scenario is significantly better than the historical norm for securities class action settlements. Moreover, while no governmental entity participated alongside the Plaintiffs in this Action, the Securities and Exchange Commission ultimately settled similar claims against Yahoo for $35 million, significantly less than what the Settlement recoups for investors.

Plaintiffs and their counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery. The Settlement was reached after more than a year of litigation, including (i) extensive investigation conducted by Co-Lead Counsel; (ii) the preparation of the detailed First Amended Class Action

---

[2] Kacy Zurkus, LESSONS FOR BOARDS FROM YAHOO'S $80 MILLION DATA BREACH SETTLEMENT, SECURITY BOULEVARD (Mar. 22, 2018), https://securityboulevard.com/2018/03/lessons-for-boards-from-yahoos-80-million-shareholder-settlement/.

Complaint and the Second Amended Class Action Complaint containing additional allegations based on evidence uncovered since the filing of the First Amended Class Action Complaint; (iii) review and analysis of documents available in the related derivative and consumer cases, including review of the redacted document production filed in the derivative litigation; (iv) review and analysis of congressional hearing testimony of Yahoo executives; (v) contentious motion practice with respect to Defendants' two motions to dismiss; (vi) extensive consultations with experts to evaluate potential damages; (vii) the preparation and exchange of mediation statements; (viii) extensive, vigorous arm's-length settlement negotiations (including a full-day formal mediation session as well as extensive interim negotiations) overseen by a national recognized and experienced mediator; (ix) review and analysis of 355,227 documents (1,839,855 pages) produced by Defendants in response to Plaintiffs' due diligence requests; and (x) the preparation of the preliminary and final approval motions and related documents.

Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, Plaintiffs and Co-Lead Counsel respectfully submit that the proposed Settlement is in the best interests of the Settlement Class.  Before entering into the Settlement, Plaintiffs and Co-Lead Counsel understood the strengths and weaknesses of the claims and defenses and engaged in significant efforts to protect the interests of the Settlement Class. While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial.  Accordingly, Plaintiffs respectfully request final approval of the Settlement as fair, reasonable, and adequate.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a federal securities class action against Yahoo! Inc., presently known as Altaba Inc. ("Yahoo" or "Altaba"), and Yahoo's former Chief Executive Officer, Marissa Mayer, Yahoo's former General Counsel, Ronald Bell, and Yahoo's former Chief Information Security Officer, Alexander Stamos, on behalf of investors who purchased or otherwise acquired Yahoo securities during the Settlement Class Period.  Plaintiffs allege that Defendants failed to disclose two large data breaches at Yahoo, in which hackers stole the records of three billion users in

2013 and compromised the accounts of 500 million users in 2014, causing financial harm to its investors.  Plaintiffs also allege that Defendants failed to disclose two additional data breaches in 2015 and 2016, which affected approximately 32 million Yahoo users.  Plaintiffs allege that, during the Class Period, Defendants falsely reassured the public that Yahoo had safeguards to protect its users' personal information, despite employing outdated and substandard information security methods and technologies.  Defendants deny these allegations.

### A.    The Litigation, Settlement Negotiations and Due Diligence

On April 24, 2017, the Court consolidated civil actions 5:17-CV-00373-LHK and 5:17-CV-01525-LHK under the caption *In re Yahoo! Inc. Securities Litigation*, Lead Case No. 17-CV-00373-LHK, appointed Ben Maher and Sutton View Partners LP as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Pomerantz LLP and Glancy Prongay & Murray LLP as Co-Lead Counsel.  On June 7, 2017, drawing upon a substantial investigation of Defendants' public statements, publicly available materials, and statements supplied by confidential witnesses, Plaintiffs filed the First Amended Complaint for Violations of the Federal Securities Laws.  (ECF No. 28.)  The First Amended Complaint asserted securities fraud claims on behalf of Plaintiffs and a class consisting of all persons other than Defendants who purchased or otherwise acquired Yahoo securities between April 30, 2013, and December 14, 2016.  *Id.*  On July 28, 2017, Defendants Yahoo and Mayer filed a motion to dismiss (ECF No. 46), to which Defendants Bell and Stamos filed joinders (ECF Nos. 48-49).  Defendants argued that Plaintiffs had failed to allege facts supporting a "strong inference of scienter" as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and failed to plead loss causation or recoverable damages.  The motion to dismiss was fully briefed by September 21, 2017.  (ECF Nos. 56-57.)

On October 10, 2017, the parties participated in an all-day mediation session led by Hon. Daniel Weinstein (Ret.), a respected and experienced mediator with JAMS.  Before the mediation, the parties prepared and exchanged extensive mediation statements with numerous exhibits, addressing liability and damages, which were submitted to Judge Weinstein.  At the mediation, the parties made substantial progress toward reaching a settlement, but did not reach

an agreement.  Over the next three months, Judge Weinstein conducted further discussions with the parties, which included many hours of telephonic and in-person meetings.  In the meantime, the parties advised the Court that settlement discussions were ongoing and expressed optimism that a settlement could be achieved.  (ECF Nos. 59, 64).  On November 22, 2017, the Court entered an Order Denying Without Prejudice the Motion to Dismiss and Motion for Joinder as Moot, advising the parties that it "will not continue the motion to dismiss hearing indefinitely" and setting a modified schedule as a result of "sufficiently plead circumstances" to warrant granting Plaintiffs leave to amend their First Amended Complaint in light of Verizon's disclosure on October 3, 2017 that "the 2013 data breach affected an additional two billion Yahoo user accounts."  (ECF No. 65.)  The Court set a deadline of February 2, 2018 for Plaintiffs to file a Second Amended Class Action Complaint.  *Id*.  On January 10, 2018, the Court ordered the parties to file a settlement status update by January 16, 2018. (ECF No. 66.)

The parties' extensive settlement discussions culminated in a Memorandum of Understanding ("MOU"), fully executed on January 23, 2018.  Joint Decl. ¶ 19.  The parties agreed to a process of informal discovery intended to allow Co-Lead Counsel to conduct due diligence and confirm in good faith that the proposed Settlement is fair, reasonable, and adequate.  To that end, the parties negotiated and agreed on the scope of Defendants' confirmatory discovery, which was expressly made a term of the MOU and the Stipulation.  On January 23, 2018, the parties informed the Court that Sutton View and Talukder, represented by Co-Lead Counsel Pomerantz LLP and Glancy Prongay, and Defendants Altaba, Inc. (f/k/a Yahoo! Inc.), Marissa Mayer, Ronald Bell, and Alexander Stamos, have reached a settlement agreement, subject to formal documentation and Court approval.  (ECF No. 68).  The parties also informed the Court that Lead Plaintiff Maher had not agreed to the settlement at that time.  *Id*. Having been notified that not all parties agreed to the proposed Settlement, on January 24, 2018, the Court denied the parties' request to vacate as moot the deadlines set by the Court regarding Plaintiffs' upcoming Second Amended Class Action Complaint and the related motion to dismiss briefing.  (ECF No. 69).  Between January 23, 2018 and February 16, 2018, pursuant to the terms of the Stipulation, Altaba produced approximately 355,227 documents (1,839,855 pages).  Joint

Decl. ¶¶ 9, 20   As part of their document review, Co-Lead Counsel prepared a detailed and substantive document review protocol to be implemented by teams of attorney reviewers from both Glancy and Pomerantz.  These teams reviewed, indexed and analyzed the documents in a carefully organized process.  *Id.* ¶¶ 42-47.  The review teams coordinated their review via frequent one-on-one telephone calls between team leaders and through regular all-hands telephone conferences to discuss their findings.  *Id.* ¶ 23.

On February 2, 2018, pursuant to the Court's November 22, 2017 Order (ECF No. 65), Plaintiffs filed their Second Amended Class Action Complaint (ECF No. 70), pleading additional facts based in large part on a review of documents produced in the consolidated derivative action pending in the California Superior Court, Santa Clara County, *In re Yahoo! Inc. Shareholder Litigation*, Lead Case No. 17-CV-307054 (the "Superior Court Consolidated Derivative Litigation").  These documents included redacted transcripts of all depositions and hearings in the Superior Court Consolidated Derivative Litigation, as well as redacted copies of materials produced by Yahoo in response to a demand made by plaintiffs in a shareholder derivative litigation commenced in Delaware Chancery Court, pursuant to 8 Del. C. § 220.

Following the execution of the MOU, the parties began to negotiate and document all terms and conditions of a settlement and prepare all related documentation.  A Stipulation and Agreement of Settlement ("Stipulation") was reached on March 2, 2018.  (ECF No. 74).  The Stipulation memorialized the agreement between the parties to fully and finally settle the Action and, among other things, fully released all Released Claims against all Defendants and the Released Parties with prejudice in return for $80 million cash.  *Id.*  On March 2, 2018, after the Stipulation was executed, Plaintiffs Sutton View and Talukder filed a Motion for Preliminary Approval of Settlement (ECF No. 73) (the "Motion for Preliminary Approval").  The same day, in accordance with the briefing schedule set forth by the Court, Defendants filed their Motion to Dismiss the Second Amended Complaint (ECF No. 75).  On March 30, 2018, Plaintiffs filed their opposition to Defendants' Motion to Dismiss the Second Amended Complaint.  (ECF No. 81).  On April 13, 2018, Plaintiff Ben Maher notified the Court that he was joining the Motion for Preliminary Approval, and that he also agreed to the Settlement terms set forth in the

Stipulation.  (ECF No. 82).  On April 16, 2018, having been notified that all Plaintiffs have joined the Motion for Preliminary Approval, the Court denied the motion to dismiss the Second Amended Complaint as moot.  (ECF No. 84).  The Court instructed the parties that should it deny the Motion for Preliminary Approval, the Court would re-notice the hearing on Defendants' March 2, 2018 Motion to Dismiss and provide Defendants one week to file a reply.  *Id*.  The Court held a Preliminary Approval Hearing on May 3, 2018.  (ECF No. 91).  On May 9, 2018, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement, preliminarily finding that "the proposed Settlement should be approved as (i) the result of serious, extensive arm's-length and non-collusive negotiations conducted with the assistance of former California Superior Court Judge Daniel Weinstein; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; (iv) not improperly granting preferential treatment to the Plaintiffs or segments of the Settlement Class; and (v) warranting notice of the proposed Settlement at the Settlement Hearing . . . ."  (ECF No. 105, at 3).

### B.     The Settlement

The Stipulation memorializes the agreement between the parties to fully and finally settle the Action and, among other things, fully releases all Released Claims against all Defendants and the Released Parties with prejudice, in return for $80 million in cash.

While Plaintiffs and Co-Lead Counsel believe the Settlement Class has valid claims against Defendants, they faced significant risks in ultimately proving all elements of their claims. Defendants denied any liability or damages and would have had numerous opportunities to convince the Court, a jury, or appellate courts that Plaintiffs failed to prove some or all of the elements of their claims.  No doubt they would have raised such challenges at every opportunity, including in a motion for summary judgment, at trial, and appeals, making successful recovery uncertain.  The Settlement eliminates these risks and provides the Settlement Class with a certain total recovery of $80 million in cash.  In light of the obstacles to recovery and the substantial time and expense that continued litigation would require, Plaintiffs and Co-Lead Counsel believe the Settlement is a good result for the Settlement Class, and provides a fair and reasonable resolution of the claims against Defendants.

## C.      Preliminary Approval and Dissemination of Notice

On May 3, 2018, following a preliminary approval hearing, the Court entered an order preliminarily approving the Settlement and the Plan of Allocation and directing that notice be disseminated to the Settlement Class Members (ECF No. 105) (the "Preliminary Approval Order"). Joint Decl. ¶ 40.   Pursuant to the Preliminary Approval Order, the Settlement Administrator disseminated 773,140 copies of the Court-approved Notice of Proposed Class-Action Settlement (the "Notice")[3] to potential Settlement Class Members and nominees thereof who could be identified with reasonable effort. Cormio Decl. ¶ 10.  The Court-approved Notice included all the information required by Rule 23(c)(2)(B) or the PSLRA or that was otherwise necessary for Settlement Class Members to make an informed decision regarding the proposed Settlement, including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the Settlement amount of $80 million; (iv) how to file a claim, and a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) that Co-Lead Counsel would apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, litigation expenses not to exceed $750,000.00 and an award to the three class representatives, not to exceed $275,000 in total, for their reasonable costs and expenses; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (ix) how to contact Co-Lead Counsel with any questions; (x) the dates and deadlines for certain Settlement-related events; and (xi) the binding effect of a judgment on Settlement Class members. *See* Cormio Decl. Exs. A (Notice) and B (Publication Notice).

The Settlement Administrator first mailed the Notice and Proof of Claim to the 9,346 individuals and organizations identified on Yahoo/Altaba's shareholder transfer records and SEC filings as well as to 4,002 banks, brokerage companies, institutions, and other third-party nominees that frequently purchase and hold securities on behalf of others. Cormio Decl. ¶¶ 3-5. The Notice directed nominees to either forward copies of the Notice to the beneficial owners or to provide the addresses of such beneficial owners to the Settlement Administrator so the

---

[3]   At the Preliminary Approval Hearing, the Court proposed several changes to the parties' proposed Notice, Publication Notice, and Proof of Claim Form.  The parties submitted updated versions of these forms incorporating the suggested changes.  (ECF No. 105, at 1-2).

Settlement Administrator could send them directly.   In total, the Settlement Administrator mailed 773,140 Notices and Proof of Claim forms to potential Settlement Class members or nominees. *Id.* ¶ 10.

In addition, the Court-approved Publication Notice was published over *PR Newswire* on May 18, 2018. *Id.* ¶ 11. The Proof of Claim and Release Form, Notice, Stipulation, and Preliminary Approval Order were also posted on the Settlement Administrator's website, along with the relevant Court-ordered deadlines. *Id.* ¶ 13, Ex. B.   To date, there has been only one objection to any aspect of the Settlement, and only thirteen requests for exclusion. *Id.* ¶ 14.

## ARGUMENT

**I      The Settlement Warrants Final Approval**

### A.      Standards for Judicial Approval of Class-Action Settlements

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also* 2 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The question is "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027; *see also Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981) (courts should "not decide the merits of the case or resolve unsettled legal questions"). Accordingly, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should a proposed settlement "be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (emphasis in original).

### B.      The Settlement Process Was Procedurally Fair

"The recommendation of experienced counsel carries significant weight in the court's

determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Here, the Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class-action litigation, following vigorous litigation, including motion practice and a carefully conducted investigation. Class Counsel, Pomerantz LLP and Glancy Prongay & Murray LLP, are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. This was a hard-fought case, involving two hotly-contested motions to dismiss. Defendants have produced, and Co-Lead Counsel have carefully reviewed 355,227 documents totaling 1,839,855 pages in order to confirm that the Settlement is fair, reasonable, and adequate. *See* Joint Decl. ¶ 27. Further confirming the adequacy of the Settlement, before agreeing to join the Settlement, Co-Lead Plaintiff Maher discussed the Settlement with a number of securities class action law firms for purposes of determining whether he should file an Objection. Maher Decl. ¶¶ 12-13 (attached as Joint Decl. Ex. 4). The response from these firms was clear: the $80 million recovery for the Class is an excellent result. *Id.*

Co-Lead Counsel had a thorough understanding of the action and of the strengths and weaknesses of the parties' respective positions and have determined that the Settlement is in the best interests of the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation. *See* Joint Decl. ¶¶ 18, 35, 50. Settlement negotiations proceeded over a period of several months and included the exchange of detailed mediation statements addressing liability and damages. The mediation process was led by a nationally-respected mediator, Hon. Daniel Weinstein. The negotiations were at all times hard-fought and at arms-length, and they produced a result that the parties believe to be in their respective best interests. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (finding "no reason to doubt that the

Settlement is procedurally fair" when "negotiations were conducted with the assistance of Judge Weinstein, a highly regarded mediator with extensive experience in securities litigation"); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003) ("oversight of the settlement negotiations" by former Magistrate Judge "provides every indication that those discussions were conducted at arms length"); *Silverman v. Motorola, Inc.*, No. 07-cv-4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (approving settlement and describing Judge Weinstein as "a nationally-recognized and highly-respected mediator"), *aff'd,* 739 F.3d 956 (7th Cir. 2013). Moreover, the mediator supports the Settlement, and it has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").

### C.     The *Hanlon* Factors Confirm That the Settlement Is Fair, Reasonable, and Adequate

To evaluate the substantive fairness of a settlement, courts in the Ninth Circuit consider the *Hanlon* factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (referring to these as the "*Hanlon* factors"). The factors are non-exclusive and not all need be shown. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 n.7 (9th Cir. 2004).

#### i.      The Overall Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, they recognize that the "risk, expense, complexity, and likely duration of further litigation" were substantial. Securities-fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *In re Vivendi Universal,*

*S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2012 U.S. Dist. LEXIS 21732, at *19 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

Plaintiffs believe their case was strong with respect to falsity and scienter, two elements of Plaintiffs' 10(b) claims.  Scienter is, however, notoriously difficult to prove in securities-fraud cases.  *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).  Indeed, in the related multidistrict consumer class action litigation, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK (N.D. Cal. Mar. 9, 2018), this Court held that the consumer plaintiffs failed to plausibly allege that the Yahoo defendants had unreasonably delayed notifying consumers that the 2013 Data Breach had occurred.  2018 U.S. Dist. LEXIS 40338, at *95-*97.  The Court also rejected the consumer plaintiffs' request for an inference that the defendants knew about the 2013 Data Breach "well before the December 2016 disclosure because Yahoo failed to fix any of the critical issues identified [in several data security assessments]. . . . Such allegations may raise the prospect that Defendants should have *discovered* the 2013 Breach at an earlier date, but they do [not] bear on when Defendants should have *notified* customers of the 2013 Breach because they say nothing about when Defendants actually discovered the 2013 Breach." *Id.* (emphasis in original).  Accordingly, there were significant scienter hurdles with respect to the 2013 Breach.

Plaintiffs also would have encountered other difficulties.  For example, with respect to class certification, Defendants likely would have argued that the alleged misstatements had no impact on Yahoo's stock price.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014).  Moreover, with respect to the element of loss causation, disentangling the market's reaction to various pieces of corrective disclosures would have required expert testimony based on methodologies that are highly contested among economists, resulting in an unpredictable and expensive "battle of the experts." *See*, *e.g.*, *In re Celera Corp. Sec. Litig.*, No. 10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *17 (N.D. Cal. Nov. 20, 2015) (finding that this weighed in favor of settlement approval); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239

(3d Cir. 2001) (finding no error in district court's determination "that establishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe").  At the very least, such arguments were likely to impose significant limits on potential damages.  And not only would any recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

Regardless of the certainty or uncertainty of the ultimate outcome, there is no question that further litigation against the Defendants would have been expensive, complex and protracted. *See*, *e.g.*, *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (class actions have a well-deserved reputation as being the most complex).  Accordingly, the likely duration and expense of further litigation also support a finding that the Settlement is fair, reasonable, and adequate.  A more favorable outcome than the current Settlement is highly uncertain at best.  *See Aarons v. BMW of N. Am., LLC*, No. 11-cv-7667 (PSG) (CWx), 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) ("Aggressively litigating class certification, fending off summary judgment, and taking this case to trial would consume significant time and resources. Moreover, there is a considerable risk that Plaintiffs would come away from this case empty-handed.").  After trial, any appeal would be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  Thus, the present value of a certain recovery now, as opposed to the mere chance for a greater one years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive no recovery.

### ii.    The Risks of Maintaining Class Action Status Throughout Trial

With respect to class certification, Defendants likely would have argued that Yahoo's securities did not trade on an efficient market, precluding any presumption of class-wide reliance on the stock price.  Even if Plaintiffs proved market efficiency, Defendants would have had the opportunity to rebut this presumption by proving that the alleged misstatements had no impact on the Company's stock price.  *See Halliburton*, 134 S. Ct. 2398.  Assuming *arguendo* that Plaintiffs would have been successful in certifying a class of aggrieved investors, it is

entirely possible that in the course of protracted litigation, Defendants could seek and even succeed at having the Class, or significant portions of the Class, de-certified. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of maintaining class certification support approval.

### iii.    The Amount Obtained in the Settlement

The law and public policy favoring settlements are particularly strong here, where an eight-figure recovery provides an immediate and tangible benefit to the Settlement Class that is well within a range of reasonableness in light of the possible recoveries and the substantial risks presented by the litigation.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could potentially obtain from the Defendants had it successfully defeated Defendants' motion to dismiss, defeated motions for summary judgment, ultimately established liability at trial, and fended off any appeals. Such outcomes are highly speculative, and would have required years of additional efforts at high cost. Moreover, a settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id.* at 624. A settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *See Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).

Nonetheless, even measured against hypothetical scenarios of recoverable damages, the $80 million Settlement is an excellent result. Employing an aggressive damages methodology, Plaintiffs' damages consultant has estimated that the maximum recoverable damages in this

case are $764.1 million using a multi-trader model.[4]   The analysis would assume that 100 percent of the company specific returns used to measure price inflation (deflation) were caused by the revelation of alleged fraud on September 22, 2016, September 23, 2016, and December 15, 2016.  In that regard, the company specific returns on those dates are not disentangled from any non-fraud related company specific information that might have been disclosed contemporaneously.   Using the first-in, first-out institutional investor model ("FIFO"), estimated damages are approximately $348.2 million, while using the last-in, first-out institutional investor model ("LIFO"), estimated damages are approximately $234.2 million.[5]

Plaintiffs contend that a significant part of the price decline following each disclosure was attributable to the disclosure of new information correcting earlier misrepresentations, and thus recoverable as damages.  However, Plaintiffs recognize and must account for the fact that some portion of these price declines may have been attributable to confounding information. Indeed, Defendants contended that recoverable damages, if any, are limited to a range of $15 million to $160 million.  For example, Defendants contended that there will be no evidence that any Yahoo executive was aware of the 2013 Data Breach, hence elimination of the 2013 Data Breach results in a substantial shortening of the class period.   As aforementioned, in the consumer case, this Court declined to infer that Defendants acted with scienter vis-à-vis the 2013 Data Breach.  Eliminating the December 15, 2016 price decline and employing a Class

---

[4] The proportional 80/20 Multi-Trader Model posits two active traders (*e.g.*, institutions and individuals) with different holdings and propensities to trade.   The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (*i.e.*, they hold 80% of shares available, but trade 20% of the volume) and a small set of "fast" traders (*i.e.*, they hold 20% of shares available, but trade 80% of the volume).  This model has been advocated by representative authors from Cornerstone Research, an economic consulting firm frequently engaged by defendants in class action securities litigation.  *See* W. Beaver, *et al.*, *Stock Trading Behavior and Damage Estimation in Securities Cases*, Cornerstone Research Working Paper (1993).

[5] The Institutional Trading Model ("ITM") estimates aggregate damages from the reported quarterly holdings of institutions which filed an SEC Form 13-F during the Damage Period, under the assumption that increases in institutional holdings represent share purchases and that decreases represent share sales.   For both institutions and non-institutions, daily holdings, purchases and sales are estimated by interpolation using the observed exchange trading volume in Yahoo stock between the reported quarterly positions.   Given that quarterly changes in reported share holdings do not fully reflect the extent of intra-quarter trading, the ITM is a conservative estimator of aggregate damages.  Under "FIFO," the "first-in-first-out" method is used for matching sales with prior purchases.  Under "LIFO," the "last-in-first-out" method is used for matching sales with prior purchases.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 5:17-cv-00373-LHK                                                                                    14

Period ending on September 21, 2016, Plaintiffs' damages consultant has estimated that the maximum recoverable damages are $213.0 million using a multi-trader model, $240.0 million using an institutional trading model under FIFO, and $148.1 million using an institutional trading model under LIFO.

Defendants also argued that the September 23, 2016, price decline should not be included in estimating damages because, in an efficient market, the price decline on the prior date (*i.e.*, September 22, 2016) fully accounted for the relevant corrective disclosure.  In other words, Defendants argued that, in an efficient market, a two-day price decline window is improper because the news revealed is reflected in the stock prices almost immediately.  Eliminating the September 23, 2016, price decline and employing corrective disclosure dates of September 22, 2016, and December 15, 2016 only, Plaintiffs' damages consultant has estimated that the maximum recoverable damages are $558.1 million using a multi-trader model, $251.4 million using an institutional trading model under FIFO, and $175.6 million using an institutional trading model under LIFO.  Eliminating the September 23, 2016 and December 15, 2016 price declines and employing a Class Period ending on September 21, 2016, Plaintiffs' damages consultant has estimated that the maximum recoverable damages are $134.5 million using a multi-trader model, $144.5 million using an institutional trading model under FIFO, and $89.3 million using an institutional trading model under LIFO.

Using each of these models, the Settlement represents an excellent recovery for the Settlement Class:

- Using the multi-trader model, Plaintiffs estimate that the Settlement returns approximately (i) 14% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 10% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.  If damages associated with the 2013 Data Breach are eliminated from this analysis, then Plaintiffs estimate that the Settlement returns approximately (i) 59% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 38% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.

- Using the FIFO Institutional Trading Model, Plaintiffs estimate that the Settlement returns approximately (i) 32% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 23% of the

estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.  If damages associated with the 2013 Data Breach are eliminated from this analysis, then Plaintiffs estimate that the Settlement returns approximately (i) 55% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 33% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.

- Using the LIFO Institutional Trading Model, Plaintiffs estimate that the Settlement returns approximately (i) 46% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 34% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.  If damages associated with the 2013 Data Breach are eliminated from this analysis, then Plaintiffs estimate that the Settlement returns approximately (i) 90% percent of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 95% confidence level; or (ii) 54% of the estimated damages suffered by the Class using corrective disclosures accompanied by price declines that are statistically significant at the 90% confidence level.

Each of these results is well above the median settlement for similar securities class actions.  *See*, *e.g.*, Cornerstone Research, *Securities Class Action Settlement 2016 Review and Analysis*, at 7-8 (noting that in 2016, securities settlements overall returned a median of 2.5% of damages, with 3.0% where damages are between $250-$499 million);  Cornerstone Research, *Securities Class Action Settlements 2013 Review and Analysis*, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million); *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage,* 2005 U.S. Dist. LEXIS 13555, at *27-*28 (average recovery between 2% to 3% of maximum damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case."). Accordingly, the $80 million Settlement is an excellent recovery.  The immediacy and certainty

of this substantial recovery strongly supports final approval.

### iv.   The Extent of Discovery Completed and the Stage of the Proceedings

As detailed above, this was a hard-fought case, involving two hotly-contested motions to dismiss.  In preparing the detailed Amended Complaint and Second Amended Complaint, Class Counsel conducted a thorough investigation that included an extensive review of publicly available documents and interviews with confidential witnesses who were former Yahoo employees.  Joint Decl. ¶¶ 8-9, 15.  Class Counsel reviewed, among other things, Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, federal indictments, wire and press releases published by and regarding Yahoo, analysts' reports and advisories about the Company, and documents obtained in the shareholder and consumer class action litigation against Yahoo, including documents that were produced in response to a demand for corporate books and records pursuant to Section 220 of the Delaware General Corporations Law and in response to expedited discovery.  Thus, Co-Lead Counsel understood the strengths and weaknesses of Plaintiffs' case and had enough information to support the fairness of the Settlement.

Although there has been no formal discovery to date, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *In re Mego*, 213 F.3d at 459 (citation and internal quotation marks omitted).  Here, moreover, the MOU provided for confirmatory discovery, which allowed Co-Lead Counsel to conduct extensive due diligence concerning the fairness, reasonableness, and adequacy of the Settlement.  As part of that discovery, Co-Lead Counsel reviewed and analyzed almost 2 million pages of documents produced by Yahoo.   Joint Decl. ¶¶ 42-47.  That due diligence confirmed Co-Lead Counsel's understanding that while the claims regarding the 2014 Data Breach appeared to be compelling, the 2013 Data Breach claims were subject to significant risk.  Moreover, Co-Lead Plaintiff Maher conducted his own due diligence of the documents produced by Yahoo, putting to rest his initial concerns regarding the adequacy of the Settlement.   Maher Decl. ¶¶ 12-14.   Accordingly, Lead Counsel gained sufficient information to negotiate and evaluate the Settlement.   Courts regularly approve settlements reached even relatively early in the formal litigation process.  *See, e.g.*, *Mego*, 213 F.3d at 459;

1   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  This sufficiently-

2   developed stage of proceedings weighs in favor of approval.[6]

3              **v.       Experienced Counsel Negotiated the Settlement in Good Faith and at**
                          **Arm's-Length and Believe It Is Fair, Reasonable, and Adequate**
4

5              Co-Lead Counsel's informed determination that the Settlement is in the best interest of

6   the Settlement Class should be afforded significant weight.  *See Nat'l Rural Telecomms. Coop.*,

7   221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of

8   counsel . . . because 'parties represented by competent counsel are better positioned than courts

9   to produce a settlement that fairly reflects each party's expected outcome in the litigation'")

10  (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs'

11  counsel should be given a presumption of reasonableness.").  This makes sense, as counsel is

12  "most closely acquainted with the facts of the underlying litigation."  *Heritage*, 2005 WL

13  1594403, at *9.  Plaintiffs' support of the Settlement, as well as the arm's-length nature of the

14  negotiations here, further favor approval.  *See* Maher Decl. ¶¶ 2, 21; Winston Decl. ¶¶ 2, 6, 12;

15  Talukder Decl. ¶ 2, 8, 15.  Final approval of the Settlement is particularly warranted here, where

16  Lead Plaintiff Maher went through an extensive process, including soliciting the advice of a

17  number of competing securities class action firms, to confirm that the Settlement is an excellent

    result.

18             "Parties represented by competent counsel are better positioned than courts to produce a

19  settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters.*

20  *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Co-Lead Counsel, Pomerantz LLP and Glancy

21  Prongay & Murray LLP, are highly experienced in federal securities class actions and had a

22  thorough understanding of the strengths and weaknesses of the parties' respective positions

23  before agreeing to settle.  Pomerantz is one of the oldest plaintiff-side securities litigation firms

24  in the country, with decades of experience litigating securities class actions nationwide,

25

26  _____
    [6] *See, e.g., Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *7
27  (N.D. Cal. Aug. 28, 2013) (settlement reached "after the parties engaged in discovery, litigated a
    motion to dismiss, and participated in mediation that involved an extensive exchange of
28  information, multiple briefings, and six all-day mediation sessions" supported "the conclusion
    that the parties' decision to settle was a fully informed one").

including within this Circuit and District. *See* Lieberman Decl. (attached to Joint Decl. as Exhibit 2), ¶ 11 and Ex. A (Pomerantz firm resume).  Glancy Prongay similarly has decades of experience in complex class action litigation and is recognized as a top plaintiffs' securities law firm.  *See* Crowell Decl. (attached to Joint Decl. as Exhibit 3), ¶ 11 and Ex. D (Glancy Prongay firm resume).  Throughout the litigation and settlement negotiations, the Defendants were represented by very skilled and highly respected counsel at Morrison & Foerster LLP, Keker, Van Nest & Peters, LLP, and Boersch Shapiro LLP.  The parties' negotiations were thorough, and the Settlement was reached without collusion after good-faith bargaining among the parties.  *See* Joint Decl. ¶¶ 17-22. Through months of negotiations, Co-Lead Counsel achieved a fair Settlement, taking into account the costs and risks of continued litigation, as described above.  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

### vi.     The Absence of a Governmental Participant

There was no governmental participant litigating on behalf of or alongside the Plaintiffs in this Action.[7]  Without this private civil action, there would have been no recovery for the Settlement Class.  Accordingly, this factor supports approval of the Settlement.  *Rodriguez,* 563 F.3d at 966.  While no parallel governmental proceedings existed alongside this Action, based on similar claims, the SEC ultimately secured a $35 million settlement with Yahoo, much less than the $80 million Settlement Co-Lead Counsel recovered for investors.

### vii.     The Positive Reaction of the Settlement Class

To date, following the mailing of 773,140 notices, only one Settlement Class member has objected to the Settlement or any aspect thereof, and only thirteen have opted out of the Settlement Class.[8]  Cormio Decl. ¶¶ 10, 14.  This favorable reaction by the Settlement Class

---

[7] On April 24, 2018, the Securities and Exchange Commission entered a Cease and Desist Order against Altaba, f/k/a Yahoo, for making material misstatements and omissions regarding the 2014 Data Breach. *See* SEC Release No. 10485 (Apr. 24, 2018), https://www.sec.gov/litigation/admin/2018/33-10485.pdf.  The SEC imposed $35 million in sanctions against the Company, payable to the SEC for transfer to the general fund of the U.S. Treasury. *Id.*

[8] Consistent with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections in order to afford class members the opportunity "thoroughly to examine counsel's fee motion," the

further supports the fairness and adequacy of the Settlement. *See Omnivision*, 559 F. Supp. 2d at 1043; *Nat'l Rural,* 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

**II      Notice to the Settlement Class Satisfied Rule 23 and Due Process**

Co-Lead Counsel provided the Settlement Class with adequate notice of the Settlement. The Settlement Administrator disseminated 773,140 copies of the Court-approved Notice and Proof of Claim form to potential Settlement Class Members and their nominees who could be identified with reasonable effort.[9]   Cormio Decl. ¶ 10.   Nominees were requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide their names and addresses so that the Settlement Administrator could mail them the Notice directly. The Notice included all the information required by Rule 23(c)(2)(B) or the PSLRA or that was otherwise necessary for Settlement Class Members to make an informed decision regarding the proposed Settlement.   *See* Cormio Decl. Ex. A; 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7). It thus described "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quoting *Lane*, 696 F.3d at 826. In addition, the Publication Notice was published over the *PR Newswire*, and the Notice, Stipulation, Proof of Claim and Release Form, and Preliminary Approval Order were all posted on the Settlement Administrator's website, along with the relevant Court-ordered deadlines. Cormio Decl. ¶¶ 11, 13, Ex. B.  To date, there have been zero objections to any aspect of the Settlement, and only thirteen requests for exclusion. *Id*. ¶ 14.

The notice program, previously approved by the Court, fairly apprised Settlement Class Members of their rights with respect to the Settlement, complied with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process, and provided the "best notice practicable under the circumstances[,] including individual notice to all members who can be

---

deadline for filing any objections is August 16, 2018.
[9] The Notice disseminated to the Settlement Class was in the form approved by the Court.  ECF No. 105-2.  *See* Cormio Decl. Ex. A.

1  identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74

2  (1974) (citing Fed. R. Civ. P. 23(c)(2)).[10]

3  **III      The Plan of Allocation Is Fair, Reasonable, and Adequate**

4       In the Preliminary Approval Order, the Court preliminarily approved the Notice and the

5  Plan of Allocation.  Plaintiffs now request final approval of the Plan of Allocation.  A plan of

6  allocation in a class action "is governed by the same standards of review applicable to approval

7  of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Omnivision*, 559 F.

8  Supp. 2d at 1045.  "It is reasonable to allocate the settlement funds to class members based on

9  the extent of their injuries or the strength of their claims on the merits."  *Id.*[11]

10      Here, the Plan of Allocation was fully described in the Notice mailed to Settlement Class

11 Members and posted on the Settlement Administrator's website, and has a rational basis.  *See*

12 Cormio Decl. Ex. A at 12-18.  Co-Lead Counsel formulated the Plan of Allocation with the help

13 of a damages expert (*see* Cormio Decl. Ex. A at 12) and with the goal of reimbursing Settlement

14 Class Members in a fair and reasonable manner.  *See* Joint Decl. ¶¶ 6, 48-49. The Plan of

15 Allocation is based on an estimation as to the amount of artificial inflation in the price of Yahoo

16 stock during the Settlement Class Period.  Cormio Decl. Ex. A at 12.  It is substantively similar

17 to other plans that have been approved in other securities class actions.  Plaintiffs respectfully

18 submit that the Plan of Allocation is fair, reasonable and adequate, and should be approved.

19      The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis,

20 calculating a Claimant's relative loss proximately caused by Defendants' alleged false and

   misleading statements and material omissions, based on factors such as when and at what prices

---

[10] *See also Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp. Sec. Litig.*, No. 10-cv-02604-EJD, 2015 WL 7351449, at *4-*5 (N.D. Cal. Nov. 20, 2015) (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient).

[11] *See also Nguyen v. Radient Pharm. Corp.,* No. 11-cv-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.") (internal quotation marks omitted).  "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."  *Id.* at *5 (internal quotation marks omitted).

the Claimant purchased and sold Yahoo securities.  It accounts for 10 significant corrective disclosure dates (May 19, 2015; September 14, 2015; January 20, 2016; September 22, 2016; September 23, 2016; October 7, 2016; October 13, 2016; October 18, 2016; October 20, 2016; and December 15, 2016) pertaining to the Class Period of April 30, 2013 through December 14, 2016.  (ECF No. 105-2, at 14).  For options holders in the Exchange Act Settlement Class, the Plan of Allocation calculates recognized losses to reflect out of pocket loss, while limiting the total payments to options holders to 2% of the Net Settlement Fund, commensurate with the relative volumes of trading in Yahoo stock and options during the Exchange Act Class Period. *Id*. at 19 n.6 and accompanying text.

Here, there has been only one vague and groundless objection and only thirteen exclusion requests from any potential Settlement Class Member, despite 773,140 notices mailed. *Heritage*, 2005 WL 1594403, at \*12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the Court finds the plan of allocation as fair and adequate.").  Co-Lead Counsel therefore believe the Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## IV        Settlement Class Certification Remains Warranted

The Supreme Court recognizes the utility and necessity of certifying settlement classes so long as absent class members' rights are protected.  *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997).  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23.  *See Hanlon*, 150 F.3d at 1019.

Here, the Settlement Class agreed by the Parties and preliminarily certified by the Court in the Preliminary Approval Order consists of:

> All persons who purchased or otherwise acquired Yahoo securities on the open market between April 30, 2013, and December 14, 2016, both dates inclusive (the "Settlement Class Period").  Excluded from the Settlement Class are (i) Defendants and the Individual Defendants' family members, heirs, successors, or assigns; (ii) directors and officers of Altaba, Inc. ("Altaba") and their families; (iii) any entity in which Defendants have a controlling interest; and (iv) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

(ECF No. 105, at 3-4).

Courts have generally found securities claims to be particularly well-suited for class treatment because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. *See Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975). This action is no exception and, as explained below, the proposed Settlement Class amply satisfies each of the requirements of Rule 23.

### A.   The Settlement Class Satisfies Rule 23(a)

The Settlement Class meets the requirement of Fed. R. Civ. P. 23(a)(1) because the class is so numerous that joinder of all members is impracticable. Here, 773,140 Notices were mailed to potential Settlement Class Members. Cormio Decl. ¶ 10. During the Class Period, Yahoo had nearly a billion public shares outstanding, and its securities were actively traded on the NASDAQ. (ECF No. 70, ¶ 14). Courts widely recognize that numerosity is met in securities cases involving nationally traded securities. *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *7-*8 (N.D. Cal. Sept. 15, 1994); *In re UTStarcom Sec. Litig.*, No. 04-cv-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).

Because the core complaint of all Settlement Class Members is that they purchased Yahoo securities at artificially inflated prices and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is also satisfied. *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of "[defendant's] common stock at artificially inflated prices"). Common questions of law and fact include, *inter alia*: (i) whether the price of Yahoo securities during the Class Period was artificially inflated because of Defendants' alleged violations of the securities laws; (ii) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about Yahoo's data safety; (iii) whether Defendants caused Yahoo to issue false and misleading financial statements during the Class Period; and (iv) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements. Securities actions containing common questions such as these have been held to be prime candidates for class certification.

*See UTStarcom*, 2010 WL 1945737, at *4.

Here, in satisfaction of Fed. R. Civ. P. 23(a)(3), the proposed representatives' and the Settlement Class Members' claims arise from the same alleged conduct by Defendants. Plaintiffs Maher, Sutton View, and Talukder allege that they, like the other Settlement Class Members, acquired Yahoo securities at artificially inflated prices and suffered losses because of Defendants' violations of the securities laws, and Plaintiffs are not subject to any unique defenses that could make them atypical. *See Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 266-67 (N.D. Cal. 2011). Differences in the amount of damages, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). Plaintiffs acquired Yahoo securities in the same manner and pursuant to the same alleged fraud as other Settlement Class Members, during the same time period. *See In re VeriSign, Inc. Sec. Litig.*, No. 02-cv-02270 JW, 2005 WL 7877645, at *10 (N.D. Cal. Jan. 13, 2005).

Finally, Plaintiffs satisfy the adequacy prong of Fed. R. Civ. P. 23(a)(4), because their interests are not antagonistic to those of other Settlement Class Members, and Plaintiffs are represented by counsel that is highly-qualified, experienced in securities class action litigation, and fully capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020. Plaintiffs seek to recover from Defendants, on their own behalf and on behalf of all members of the Settlement Class, damages allegedly caused by Defendants' unlawful conduct. Under the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Net Settlement Fund as the rest of the Settlement Class, except for any awards approved by the Court.

Moreover, Plaintiffs have regularly communicated with Co-Lead Counsel throughout the Action, and have fairly and adequately protected and advanced the interests of the Settlement Class. Joint Decl. ¶ 62; Maher Decl. ¶ 9; Winston Decl. ¶ 6; Talukder Decl. ¶ 8.

## B.    The Settlement Class Satisfies Rule 23(b)

This Action also meets the requirements of Rule 23(b)(3). Questions of law or fact common to the Settlement Class predominate over questions affecting only individual members, and a class action is the superior method of adjudication. *See, e.g., In re LDK Solar Sec. Litig.*,

255 F.R.D. 519, 525 (N.D. Cal. 2009).  Predominance exists where the class members "have more issues keeping them together than driving them apart."  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) (explaining that "questions related to liability" have "primacy" over any theoretical defenses that "only affect certain members of the class").  "The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct."  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1993 U.S. Dist. LEXIS 21272, at *16-*17 (C.D. Cal. Feb. 26, 1993).  Here, Defendants' alleged conduct impacted all Settlement Class Members in the same way. *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").  Issues relating to the Defendants' liability are common to all Settlement Class Members.  *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("The predominant questions of law or fact at issue in this case are the alleged misrepresentations Defendants made during the Class Period and are common to the class.").

Further, "the superiority of class actions in large securities fraud [matters] is well recognized."  *In re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985).  The fact that a class action is the superior method to efficiently and effectively pursue the claims alleged here is shown by the fact that if the Plaintiffs, and each of the Settlement Class Members, were to bring individual actions, they each would be required to prove the same wrongdoing by the Settling Defendants to establish liability.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should approve the Settlement and Plan of Allocation as fair, reasonable, and adequate; find that the Notice and the procedures for its dissemination satisfied due process and complied with the PSLRA and Fed. R. Civ. P. 23(e); certify the Settlement Class; appoint Plaintiffs as Settlement Class Representatives with Pomerantz and GPM as Settlement Class Counsel; enter the proposed Order and Final Judgment in the form filed herewith, and dismiss the Action with prejudice.

Dated:  August 2, 2018

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Joshua L. Crowell*
Joshua L. Crowell
Vahe Mesropyan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
jcrowell@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Emma Gilmore
Jay Douglas Dean
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
jddean@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile  (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Plaintiffs*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 2, 2018, at Los Angeles, California.

_s/ Joshua L. Crowell_
Joshua L. Crowell

# Mailing Information for a Case 5:17-cv-00373-LHK In Re Yahoo! Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Edward Andrew Bayley**
  ebayley@keker.com,laure-mandin-6675@ecf.pacerpro.com,lmandin@keker.com,efiling@keker.com,ed-bayley-0392@ecf.pacerpro.com

- **Martha A Boersch**
  mboersch@boerschshapiro.com,lkollios@boerschshapiro.com,rvorkoeper@boerschshapiro.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com,joshua-crowell-3496@ecf.pacerpro.com,VMesropyan@glancylaw.com,JLeinbach@glancylaw.com,JCohen@glancylaw.com

- **Jordan Eth**
  jeth@mofo.com,jordan-eth-3756@ecf.pacerpro.com,tkhadoo@mofo.com,trina-khadoo-5939@ecf.pacerpro.com

- **Emma Gilmore**
  egilmore@pomlaw.com,egoodman@pomlaw.com

- **Jo W. Golub**
  jgolub@keker.com,sandy-giminez-6735@ecf.pacerpro.com,SHarmison@keker.com,efiling@keker.com,jah@keker.com,jo-golub-8129@ecf.pacerpro.com

- **Michael Grunfeld**
  mgrunfeld@pomlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Lara Kollios**
  lkollios@boerschshapiro.com,dshapiro@boerschshapiro.com,rvorkoeper@boerschshapiro.com,mboersch@boerschshapiro.com

- **Adam G. Kurtz**
  agkurtz@pomlaw.com

- **Jennifer Michelle Leinbach**
  jleinbach@glancylaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,magdalena-blackmer-3352@ecf.pacerpro.com,judson-lobdell-6493@ecf.pacerpro.com,mblackmer@mofo.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Kathryn Elizabeth Ross**
  kathrynross@kathrynrosslaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`