**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Emma Gilmore (pro hac vice)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
egilmore@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Joshua L. Crowell (295411)
Vahe Mesropyan (307244)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcrowell@glancylaw.com

*Lead Counsel for Plaintiffs*
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE YAHOO! INC. SECURITIES LITIGATION | Case No. 5:17-cv-00373-LHK |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS FOR PLAINTIFFS** |
| | Date:   September 6, 2018<br>Time:   1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 6, 2018, at 1:30 p.m. (or as soon thereafter as the matter may be heard), at a Settlement Hearing at the United States District Court for the Northern District of California, in the Courtroom of the Honorable Lucy H. Koh, located at 280 South 1st Street, San Jose, California, Plaintiffs / Class Representatives Ben Maher, Sutton View Partners LP and Nafiz Talukder will move the Court for an order (1) granting an award of attorneys' fees and authorizing reimbursement of expenses; and (2) granting compensatory awards to the Class Representatives. The requested fee award, reimbursement of expenses, and Plaintiff compensatory awards are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Stipulation and Agreement of Settlement dated March 2, 2018 (ECF No. 74) (the "Stipulation") and exhibits thereto; the joint declaration of Jeremy A. Lieberman and Joshua L. Crowell ("Joint Decl."); the declarations of Pomerantz LLP ("Lieberman Decl.") and Glancy Prongay & Murray LLP ("Crowell Decl."); the declarations of Plaintiffs Ben Maher ("Maher Decl."), Sutton View Partners LP ("Winston Decl."), and Nafiz Talukder ("Talukder Decl."); the declaration of Claims Administrator JND ("Cormio Decl."); Plaintiffs' Motion for Final Approval of Settlement, Class Certification and Plan of Allocation ("Final Approval Motion"); the Court's file in this Action; and any other argument or evidence that Lead Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' request for an award of attorneys' fees in the amount of 18% of the Settlement Fund, plus interest, payable to Co-Lead Counsel from the Settlement Fund, should be granted.

2.      Whether Co-Lead Counsel's out-of-pocket expenses of $353,282.72 were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed from the Settlement Fund.

3.      Whether Plaintiffs' requests for awards of $235,200 for Plaintiff Ben Maher, $7,500 for Plaintiff Sutton View, and $7,500 for Plaintiff Talukder, in reimbursement for their reasonable costs and expenses directly relating to their representation of the Settlement Class, should be granted and paid from the Settlement Fund.

## **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 4

      1.    Factual Allegations, Procedural History and Settlement Negotiations....... 4

      2.    Specific Efforts of Lead Counsel ................................................................. 4

ARGUMENT ........................................................................................................... 7

  A.    LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES OF
       25% OF THE SETTLEMENT AMOUNT FROM THE COMMON FUND......... 7

      1.    It Is Appropriate To Award a Reasonable Percentage of the Common
          Fund as Attorneys' Fees............................................................................... 7

      2.    The Requested Attorneys' Fees Are Reasonable When Viewed
          Against Ninth Circuit Norms ..................................................................... 10

      3.    Relevant Ninth Circuit Factors Support the Requested Fee Award ......... 13

          a)    Lead Counsel Achieved a Favorable Result for the Settlement
              Class ................................................................................................ 14

          b)    The Risks of Litigation Were High................................................. 15

          c)    The Contingent Nature of the Fee and the Financial Burden
              Carried By Counsel......................................................................... 16

          d)    The Skill Required and the Quality of the Work ........................... 18

          e)    A Lodestar Cross-Check Shows the Fee Request Is
              Reasonable ...................................................................................... 19

          f)    The Settlement Class's Reaction to the Fee Request Was
              Overwhelmingly Positive................................................................ 20

  B.    LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS
       REASONABLE AND NECESSARY TO OBTAIN THE SETTLEMENT ........ 21

  C.    THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE APPROVED . 23

CONCLUSION..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995)................................................................22

*Alvarado v. Nederend*,
  No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188 (E.D. Cal. May 17, 2011)..................22

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................17

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)........................................................................10

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990)..................18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)................................................................17

*Blum v. Stenson*,
  465 U.S. 886, 900 (1984)....................................................................8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).........................................................................7

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ...............................................................22

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .............................................................8

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .............................................................8

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000).............................................................21

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
  (N.D. Cal. Feb. 11, 2016)..............................................................19, 20

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ................................................................................19

*Fogarazzo v. Lehman Bros.*,
    No. 03 CIV. 5194 SAS, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)....................15

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)....................................................................................19

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ....................................................................................8

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ......................................................................................21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ................................................................................17

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................9

*In re Am. Apparel, Inc. S'holder Litig.*,
    No. CV-10-06352-MMM-JCGx, 2014 WL 10212865
    (C.D. Cal. July 28, 2014) ................................................................................ *passim*

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..............................................................................8, 10

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ....................................................................15

*In re Businessland Sec. Litig.*,
    No. C-90-20476-RFP, 1991 WL 427887 (N.D. Cal. June 14, 1991) ......................21

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................19

*In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................................................................8

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................17

*In re Heritage Bond Litig.*,
    233 F. App'x 627 (9th Cir. 2007) ..............................................................................7

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............15, 18, 21

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  No. 09CV1088 BTM KSC, 2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) ..........................22

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)......................................................................................15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................................14, 17, 21

*In re JDS Uniphase Corp. Securities Litigation*,
  No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). ....................................17

*In re Magsafe Apple Power Adapter Litig.*,
  No. 5:09-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015)................................22

*In re Media Vision Tech. Sec. Lit.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................................22

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................................................21

*In Re Nat'l Health Laboratories Sec. Litig.*,
  Nos. 92–1949 & 93–1694 (S.D. Cal. Aug. 15, 1995)..........................................................14

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ *passim*

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................................21

*In re Public Service Co. of New Mexico*,
  No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992) ................................................18

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................................9

*In re Thirteen Appeals Arising*
  *out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295
  (1st Cir. 1995);........................................................................................................8

*In re Vivendi Universal, S.A., Sec. Litig.*,
  No. 02 CIV. 5571 RJH, 123 F. Supp. 3d 424 (S.D.N.Y. 2015)............................................17

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d. Cir. 1986)..................................19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................7, 15, 16

*In re World Trade Ctr. Disaster Site Litig.*,
  754 F.3d 114 (2d Cir. 2014) ..............................................................8

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ..............................................................8

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .......................10, 18

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
  No. C 09-05418 RS, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ........................22

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) .....................................................22

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................8, 9

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ..........................................................10

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ..............................................................8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................8

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ......................................................16, 20

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ............................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).....................................................................10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................8

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .....................................................20

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...........................................................7

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................. *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

15 U.S.C.A. §77z-1(a)(6).................................................................................9

15 U.S.C.A. §78u-4(a) ....................................................................................9

**Rules**

Fed. R. Civ. P. 23(e) ......................................................................................1

Fed. R. Civ. P. 23(h) ......................................................................................7

**Other Authorities**

7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
    Procedure* §1803 (2d ed. 1986) .................................................................7

Plaintiffs Ben Maher, Sutton View Partners LP ("Sutton View") and Nafiz Talukder (together, "Plaintiffs"), individually and on behalf on behalf of themselves and all other members of the Settlement Class, respectfully move this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees equaling 18% of the $80,000,000 Settlement Fund, or $14,400,000, plus interest; (2) granting reimbursement of $353,282.72 in reasonable and necessary expenses that were incurred by Plaintiffs' Counsel in prosecuting this Action; and (3) granting $235,200 for Plaintiff Ben Maher, $7,500 for Plaintiff Sutton View, and $7,500 for Plaintiff Talukder, in reimbursement for their reasonable costs and expenses directly relating to their representation of the Settlement Class.

## INTRODUCTION

Co-Lead Counsel[1] prosecuted this Action on an entirely contingent basis.  There was no companion government[2] case and no guarantee of a successful resolution.  Co-Lead counsel advanced over $353,000 in expenses with no guarantee of reimbursement.  After almost two years and more than 16,000 professional hours,[3] Lead Counsel obtained a Settlement for a gross recovery of $80 million in cash—an excellent benefit to the Settlement Class, particularly given the difficulties of proving scienter with regard to the 2013 Data Breach and establishing loss causation.  The Settlement has been hailed by commentators as "*the first of its kind––a milestone shareholder settlement related to a data breach,*" a "*major win*" that extracted a "*hefty sum,*" "*motivat[ing] boards to get started on making real changes*" and "*serv[ing] as a*

---

[1] On April 24, 2017, the Court appointed Pomerantz LLP and Glancy Prongay & Murray LLP as Co-Lead Counsel (ECF No. 19).

[2] On April 24, 2018, after the parties had executed the Stipulation, moved for Preliminary Approval of the Settlement and conditional certification of the Settlement Class, after confirmatory discovery had substantially been completed, and after almost all of the other activities attested in greater detail in the Joint Decl., the Securities and Exchange Commission entered a Cease and Desist Order against Altaba, f/k/a Yahoo, for making material misstatements and omissions regarding the 2014 Data Breach. *See* SEC Release No. 10485 (Apr. 24, 2018), https://www.sec.gov/litigation/admin/2018/33-10485.pdf.  Joint Decl. ¶7 n.3.  The SEC imposed $35 million in sanctions against the Company, payable to the SEC for transfer to the general fund of the U.S. Treasury.  *Id*.

[3] These hours do not include additional professional work conducted after the Court granted preliminary approval of the Settlement on May 9, 2018 (ECF No. 105).

***wake-up call for boards***."[4]   As detailed in the accompanying Final Approval Brief, depending on Plaintiffs' ability to prove scienter with respect to the 2013 and 2014 data breaches, the $80 million Settlement provides the Settlement Class with a significant recovery.  Specifically, if the Court ruled that (i) Plaintiffs did not adequately allege scienter with respect to the 2013 Breach, and (ii) the stock price drop on September 23, 2016 cannot be attributed to disclosures occurring on the previous day, then the maximum recoverable damages would be $134.5 million.  Joint Decl. ¶ 51.  Under this highly plausible scenario, the Settlement provides a recovery of 59.5%— an excellent result.  Under other plausible damages scenarios, the Settlement provides a recovery of up to 90% of recognizable losses.  *See* Joint Decl. ¶ 53.  Each scenario is significantly better than the historical norm for settlements in securities class actions.  Moreover, the result achieved by Co-Lead counsel dwarfs that achieved by the Securities and Exchange Commission on similar claims.  Compared to this Settlement, the SEC only recovered $35 million against the Company.

As compensation for their efforts, Co-Lead Counsel respectfully request an award of attorneys' fees in the amount of eighteen percent (18%) of the gross Settlement Fund, which equates to $14,400,000, and is 7% less than the 25% benchmark set by the Ninth Circuit.  This fee award is reasonable under the percentage-of-recovery method favored in the Ninth Circuit for common-fund cases, is consistent with the range typically awarded in similar cases in the Ninth Circuit, and is justified by a lodestar cross-check.

Co-Lead Counsel also seek reimbursement of the out-of-pocket expenses incurred in prosecuting these claims in the total amount of $353,282.72.  *See* Joint Decl. ¶ 59. The expenses are reasonable, were necessarily incurred as part of the successful prosecution of this Action, and are of the kind regularly reimbursed by courts within this Circuit.  Significantly, they are less than half the $750,000 expense figure reported in the Notice, which generated only one objection.

Additionally, Plaintiffs seek awards of $235,200 for Plaintiff Ben Maher, $7,500 for Plaintiff Sutton View, and $7,500 for Plaintiff Nafiz Talukder, in reimbursement for their

---

[4] *See* Kacy Zurkus, Lessons for Boards from Yahoo's $80 Million Data Breach Settlement, Security Boulevard (2018), https://securityboulevard.com/2018/03/lessons-for-boards-from-yahoos-80-million-shareholder-settlement/ (last visited Aug. 2, 2018).

reasonable costs and expenses directly relating to their representation of the Settlement Class. *See* Joint Decl. ¶ 63; Maher Decl. ¶ 18; Winston Decl. ¶ 9; Talukder Decl. ¶ 12.[5]  Potential compensatory awards of up to $275,000 were publicized in the Notice but generated no specific objection.

Co-Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should be awarded by the Court along with compensatory awards for the Class Representatives.

Pursuant to the Preliminary Approval Order, copies of the long-form Notice have been disseminated to 773,140 potential Settlement Class Members and nominees.  Cormio Decl. ¶ 10 (attached as Joint Decl. Ex. 1).  The Notice stated that Co-Lead Counsel would seek an award of attorneys' fees of up to 25% of the Settlement Fund, reimbursement of up to $750,000 in litigation expenses, and for an award to the three class representatives, not to exceed $275,000 in total, for their reasonable costs and expenses. Cormio Decl. Ex. A at 1.  To date, no Settlement Class Member has specifically objected to these requests.[6]  This overwhelmingly favorable response by the Settlement Class strongly supports the reasonableness of the requested fee award, reimbursement of expenses, and compensatory awards.

Thus, Plaintiffs and Co-Lead Counsel respectfully request that the Court grant this Motion.

---

[5] The Maher, Winston, and Talukder declarations are attached as Joint Decl. Exhibits. 4, 5, and 6, respectively.

[6] Lead Counsel has received one vague—and, in Co-Lead Counsel's view, groundless—objection that specifically addresses only claims documentation requirements, rather than the Settlement Amount, Plan of Allocation, fee and expense application, or Plaintiff awards.  The deadline for filing any such objection is August 16, 2018.  Plaintiffs will address this and any other objection in their reply papers.

## BACKGROUND

### 1.      Factual Allegations, Procedural History and Settlement Negotiations

The relevant facts along with the procedural history and settlement negotiations are set forth in more detail in the accompanying Final Approval Brief (under the heading "Factual and Procedural Background") and in the Joint Decl. ¶¶ 7-47.

### 2.      Specific Efforts of Co-Lead Counsel

In this Action, Plaintiffs would be required to prove that (i) Defendants made false and misleading statements or omitted to disclose material facts regarding the 2013 Data Breach, the 2014 Data Breach and the 2015-2016 Forged Cookie Data Breach; (ii) Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature; and (iii) investors suffered injury as a result thereof.

To prosecute the Action and to work toward obtaining and presenting the proof required to prevail at trial, Co-Lead Counsel engaged in extensive work on behalf of the Class.  Among other work, Co-Lead Counsel:

- Reviewed and analyzed Yahoo's SEC filings, press releases, quarterly earnings call transcripts, and other public statements;

- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Yahoo;

- Reviewed and analyzed stock trading data and historical stock price information relating to Yahoo;

- Hired a private investigator that located and interviewed former Yahoo employees as confidential witnesses with knowledge of the events relevant to the allegations in the Action;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Drafted and filed the initial complaint in the individual action consolidated herein, the detailed First Amended Class Action Complaint and the detailed Second Amended Class

Action Complaint containing additional allegations based on evidence uncovered since the filing of the First Amended Class Action Complaint;

- Reviewed and analyzed documents available in the related derivative and consumer cases, including review of the redacted document production filed in the derivative litigation;

- Reviewed and analyzed congressional hearing testimony of Yahoo executives;

- Filed oppositions to Defendants' motions to dismiss the First Amended Class Action Complaint and the Second Amended Class Action Complaint;

- Engaged in numerous discussions and negotiations with counsel for the Defendants;

- Prepared for and engaged in a full-day formal mediation session conducted with a national recognized and experienced mediator, the Honorable Daniel Weinstein (Ret.);

- Prepared and exchanged mediation statements;

- Engaged in additional extensive arms-length negotiations overseen by Hon. Weinstein and  agreed with counsel for Defendants on a process of informal discovery intended to allow Co-Lead Counsel to conduct due diligence and confirm in good faith that the Settlement is fair, reasonable, and adequate.  To that end, the parties negotiated and agreed on the scope of Defendants' confirmatory discovery, which was expressly made a term of the Memorandum of Understanding;

- Drafted and negotiated the terms of confidentiality stipulations concerning the confirmatory discovery production;

- Engaged in three months of intensive confirmatory discovery, including review and analysis of hundreds of thousands of documents produced by Yahoo (355,227 documents totaling 1,839,855 pages) and the preparation of seven substantive memoranda on specific subject matters in order to assess the fairness, reasonableness and adequacy of the Settlement;

- Conducted further exhaustive analysis of public documents, in addition to the documents obtained in confirmatory discovery, in order to assess the fairness, reasonableness and adequacy of the Settlement;

- Prepared the motion papers and related documents necessary to provide notice of the Settlement to Settlement Class members and to obtain preliminary approval of the Settlement;

- Obtained competing bids for claims administration work related to the Settlement before selecting the Settlement Administrator;

- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account;

- Prepared for and participated in the hearing on preliminary approval of the Settlement, as well as several other hearings and conferences earlier in the litigation;

- Engaged in further discussions with the Defendants' counsel concerning, *inter alia*, a number of proposed changes to the Settlement Class Notice and Proof of Claim Form suggested by the Court during the Preliminary Approval Hearing and drafted updates to those documents consistent with the Court's suggestions;

- Obtained preliminary approval of the Settlement and thereafter worked with the Settlement Administrator to effectuate notice and oversee the claims administration process;

- Responded to inquiries received from potential Class members following the publication and distribution of notice;

- Prepared the motion papers and related documents necessary to obtain final approval of the Settlement;

- Will prepare for and participate in the final approval hearing on the Settlement in September 2018; and

- Will oversee the administration of the Net Settlement Fund through final distribution.

*See* Joint Decl. ¶¶ 7-47.

Co-Lead Counsel's efforts to obtain the Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved. *Id*. ¶ 7. As compensation for these efforts, Co-Lead Counsel respectfully request this Court to award attorneys' fees of 18% of the Settlement Fund, plus reimbursement of $353,282.72 in out-of-pocket expenses incurred. Supported by ample

case law, these requests are appropriate given the excellent resolution obtained for the Settlement Class.

## ARGUMENT

### A.   CO-LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES OF 18% OF THE SETTLEMENT AMOUNT FROM THE COMMON FUND

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole."). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1803, at 493-94 (2d ed. 1986). The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*, 19 F.3d 1291, 1300 (9th Cir. 1994). The 18% fee requested here is 7% lower than the benchmark established by the Ninth Circuit and will fairly compensate counsel for the risks undertaken in this action. The lodestar cross-check confirms the fairness of the requested fee, as the multiplier is well-within the parameters approved by courts in this Circuit.

#### 1.   It Is Appropriate to Award a Reasonable Percentage of the Common Fund as Attorneys' Fees

Under applicable standards, an attorney fee award must be reasonable. *See*, *e.g.*, 15 U.S.C. § 78u-4(b); Fed. R. Civ. P. 23(h) ("[T]he court may award reasonable attorney's fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007). For their efforts in creating a common fund for the benefit of the Settlement Class, Co-Lead Counsel seek a fee of 18% of the gross Settlement Fund. The requested fee for the Settlement on behalf of

the Settlement Class is calculated based upon the Settlement Fund amount of $80,000,000 in cash, with Lead Counsel requesting 18%, or $14,400,000.

Ample precedent supports Co-Lead Counsel's fee request.  In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984).  The Ninth Circuit has expressly approved the use of the percentage of recovery method in common fund cases.  *See*, *e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).[7]  While courts within the Ninth Circuit have discretion to choose whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this Circuit often prefer a percentage-of-the-fund approach in common fund cases.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("the percentage method in common fund cases appears to be dominant").  The percentage method "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients . . . ."

---

[7] In fact, percentage-based fee awards in common fund cases have been approved by every Circuit Court that has addressed the issue.  *See*, *e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988).  The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases.  *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014).

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  In *Paul, Johnson*, the Ninth Circuit explained the underlying equitable principle:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885) …, it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. … The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (internal citations omitted).  Use of the percentage method also decreases the burden on courts by eliminating a full-blown, detailed, and time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  For these reasons, use of the percentage method "appears to be dominant."  *OmniVision,*  559 F. Supp. 2d at 1046.

Moreover, using the percentage method is proper in securities fraud cases.  The plain language of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class.  *See* 15 U.S.C.A. §78u-4(a)(6); 15 U.S.C.A. §77z-1(a)(6).  "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"  *In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar violations.  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws.

*See generally*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

### 2.    The Requested Attorneys' Fees Are Reasonable When Viewed Against Ninth Circuit Norms

The Settlement Fund consists of $80,000,000 in cash.  The instant request for a 18% attorneys' fee is 7% lower than the benchmark established by the Ninth Circuit and is well within the range of such fees awarded under similar circumstances and by judges in this District.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.3% of the total settlement value, with 25% considered something of a benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Bluetooth*, 654 F.3d at 943; *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00463, 2011 U.S. Dist. LEXIS 111361, at *11 (N.D. Cal. June 30, 2011) (*Koh, J.*) (recognizing Ninth Circuit's benchmark, surveying cases, and granting 25% fee award); Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-cv-1376 (N.D. Cal. Nov. 14, 2011), ECF No. 475 (*Koh, J.*) (approving 19.75% award of attorney fees from $125 million Settlement Fund); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 U.S. Dist. LEXIS 118052, at *23-*29 (N.D. Cal. Sept. 2, 2015) (*Koh, J.*) (observing that "it is well established that 25% of a common fund is a presumptively reasonable amount of attorney's fees" but employing the lodestar method because the requested 19.5% in attorneys' fees in a mega-settlement of $415 million would have yielded "too high" a multiplier of 4.7 (for class counsel) and 8.7 (for Devine counsel); *Johnson v. Quantum Learning Network, Inc.*, No. 15-cv-05013, 2017 U.S. Dist. LEXIS 27354, at *15-*16  (N.D. Cal. Feb. 27, 2017) (because parties were not involved in "significant motions practice," granting 28% of the settlement fund instead of Class Counsel's request of 33.33%) (*Koh, J.*).

As noted by courts, in the Ninth Circuit, in "most common fund cases, the award exceeds that [25%] benchmark."  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367,

at *6 (N.D. Cal. Feb. 2, 2009); *see also Vizcaino*, 290 F.3d at 1048-50 (9th Cir. 2002) (affirming fee award of 28% of $96.9 million settlement fund); *Omnivision*, 559 F. Supp. 2d at 1047 (noting that "in most common fund cases, the award exceeds that [25%] benchmark," and approving 28% fee award of $13.8 million settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (upholding fee award of 33.3% of $1.725 million settlement); *Patel v. Axesstel, Inc.*, No. 14-cv-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949, at *20-*21 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities fraud class action based on "the complexity of securities litigation, the lodestar crosscheck, and the lack of any objection from the class members"); *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at *30 (C.D. Cal. May 6, 2014) (adjusting benchmark upward to award 28% fee in securities fraud class action); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (approving 33.3% fee award and explaining that "where recovery is uncertain, an award of one-third of the common fund" is appropriate); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (explaining that a typical fee award in common fund cases in the Ninth Circuit is 30-33% of the fund); *Stuart v. Radioshack Corp.*, No. 07-cv-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (approving 33.3% fee award and explaining that it is "well within the range of percentages which courts have upheld as reasonable"); Order [Granting Final Approval and Attorneys' Fees], *In re Brocade Sec. Litig.*, No. 05-cv-2042 CRB (N.D. Cal Jan. 26, 2009) (approving 25% fee award of $160 million settlement fund), ECF No. 496; *In re Broadcom Corp. Sec. Litig.*, No. 01-cv-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41993, at *17-*22 (C.D. Cal. Sept. 12, 2005) (approving 25% fee award of $150 million settlement fund).[8]

---

[8] Courts in other jurisdictions also routinely award fees of 25% or higher. *See*, *e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015) (awarding 33-1/3% of $46 million settlement fund); *In re SilverCorp Metals, Inc., Sec. Litig.*, No. 12-cv-9456 (S.D.N.Y. Feb. 13, 2015) (awarding 25% of a $14 million settlement); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598-99 (N.D. Ill. 2011) (observing that "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3%

Co-Lead Counsel's request for a 18% fee award is eminently reasonable and supported by common practice in this and other Circuits.  Indeed, according to a survey of cases conducted by the Ninth Circuit, in similar settlements ranging around $80 million, it is common to award fees higher than those requested here.  *See Vizcaino,* 290 F.3d at 1053 (Appendix), citing *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886 (N.D. Cal. Nov. 20, 2000) ($82m; 25.0%; $20m); *In re Aetna, Inc. Sec. Litig.*, MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ($83m; 29.5%; $24m; 3.6); *In re Paracelsus Corp. Sec. Litig.*, No. 96-3464 (S.D. Tex July 22, 1999) ($80m; 23.0%; $18m).

This Court has frequently granted attorneys' fee requests based on percentages higher than what Plaintiffs seek here:

| Case | Settlement Amount | Atty Fees % | Multiplier |
|---|---|---|---|
| *Huynh v. Hous. Auth. of Santa Clara*, No. 14-cv-02367-LHK, 2017 U.S. Dist. LEXIS 39138 (N.D. Cal. Mar. 17, 2017) | $3,200,000 | 21.6% | 0.6 |
| *Johnson v. Quantum Learning Network, Inc.*, No. 15-cv-05013, 2017 U.S. Dist. LEXIS 27354 (N.D. Cal. Feb. 27, 2017) | $400,000 | 28.0% | 0.63 |
| *Perkins v. LinkedIn Corp.*, No. 13-cv-04303, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) | $13,000,000 | 25.0% | 1.45 |
| *Williamson v. Microsemi Corp.*, No. 14-cv-01827, 2015 U.S. Dist. LEXIS 191692 (N.D. Cal. Feb. 19, 2015) | $2,350,000 | 25.0% | 1.80 |
| *Chavez v. PVH Corp.*, No. 13-cv-01797, 2015 U.S. Dist. LEXIS 170422 (N.D. Cal. Dec. 18, 2015) | $1,850,000 | 25.0% | 1.09 |
| *Barrera v. Home Depot U.S.A., Inc.*, No. 12-cv-05199, 2015 U.S. Dist. LEXIS 66796 (N.D. Cal. May 20, 2015) | $1,500,000 | 25.0% | 1.10 |
| *De Mira v. Heartland Emp't Serv., LLC*, No. 12-cv-04092, 2014 U.S. Dist. LEXIS 33685 (N.D. Cal. Mar. 13, 2014) | $1,453,000 | 28.0% | 1.36 |
| *Hernandez v. Children's Creative Learning Ctrs.*, No. 13-cv-02246, 2014 U.S. Dist. LEXIS 171713 (N.D. Cal. Dec. 11, 2014) | $700,000 | 24.1% | 0.60 |
| *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) | $4,250,000 | 30.0% | 2.77 |

of the settlement fund is within the reasonable range," and approving 33.3% of $9.5 million); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving 33.3% fee out of $175 million fund); *In re Select Comfort Corp. Sec. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (approving 36% fee award from $127 million common fund).

| | | | |
|---|---|---|---|
| *Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) | $1,625,000 | 24.1% | 0.38 |
| *Ortiz v. Home Depot U.S.A., Inc.*, No. 09-cv-03485, 2012 U.S. Dist. LEXIS 13009 (N.D. Cal. Feb. 2, 2012); | $910,000 | 54.9% | 0.94 |
| *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-cv-01376, 2011 U.S. Dist. LEXIS 131788 (N.D. Cal. Nov. 14, 2011) | $125,000,000 | 19.8% | 2.82 |
| *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00463, 2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) | $12,500,000 | 25.0% | 4.29 |

### 3.   Relevant Ninth Circuit Factors Support the Requested Fee Award

Relevant factors in assessing whether the requested fee percentage is appropriate include: the results for the class; the risks for its counsel, whether the fee is within the range typically associated with cases of a similar kind; the burden on plaintiffs' counsel of prosecuting the case, and the difficulty of the questions presented. *See Vizcaino*, 290 F.3d at 1048-50. Here, the requested fee percentage is reasonable in light of these factors and a lodestar cross-check.

Co-Lead Counsel aggressively prosecuted this Action with no guarantee of receiving any remuneration. Throughout this litigation, Co-Lead Counsel has been aware of numerous risks, including the difficulty of surviving motions to dismiss and the difficulty of proving key elements of the case at summary judgment, at trial, and/or on appeal, including falsity, knowledge or recklessness, loss causation, and damages. Indeed, in the related multidistrict consumer class action litigation, *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK (N.D. Cal. Mar. 9, 2018), this Court held that the consumer plaintiffs failed to plausibly allege that the Yahoo defendants had unreasonably delayed in notifying consumers that the 2013 Data Breach had occurred. 2018 U.S. Dist. LEXIS 40338, at *95-*97. The Court also rejected the consumer plaintiffs' request for an inference that the defendants knew about the 2013 Data Breach "well before the December 2016 disclosure because Yahoo failed to fix any of the critical issues identified in [several data security assessments]. . . . Such allegations may raise the prospect that Defendants should have *discovered* the 2013 Breach at an earlier date, but they do [not] bear on when Defendants should have *notified* customers of the 2013 Breach because they say nothing about when Defendants actually discovered the 2013 Breach." *Id*. (emphasis in original).

In the face of all of these challenges, Co-Lead Counsel expended a combined total of 16,837.10 professional hours and incurred $353,282.72 in out-of-pocket expenses in their efforts to litigate against the Defendants and to secure and advance the Settlement, without any compensation or reimbursement of their expenses. *See* Joint Decl. ¶¶ 55, 59. An attorney fee award of 18% is particularly justified here given the recovery of $80,000,000, obtained despite the obstacles posed by vigorous motion practice by sophisticated defense counsel. Accordingly, the favorable result under the circumstances, combined with the substantial risks faced by Plaintiffs and Co-Lead Counsel, and the other factors cited herein, support the requested attorneys' fee of 18% of the Settlement amount.

### a)   Lead Counsel Achieved a Favorable Result for the Settlement Class

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007). Here, the Settlement Fund consists of $80,000,000 in cash.

Notably, recovery of potentially higher damages would have depended on overcoming the Defendants' motion to dismiss the Second Amended Class Action Complaint and, if successful, on overcoming an expected motion for summary judgment. Plaintiffs would then have had to prevail at trial, to survive any appeals, and then to collect from the Defendants. By resolving this Action against the Defendants now, Plaintiffs and Co-Lead Counsel secured a certain and favorable recovery for the Settlement Class while avoiding these risks. Under any measure, this result is reasonable and supports the requested fee award. Indeed, fees representing a higher percentage than that requested here have been awarded by courts, including those within the Ninth Circuit, in comparably-sized (and even considerably larger) securities class action settlements. *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 (listing settlement amounts and percentage fee awards in "megafund" cases with settlements over $50 million, in which the three smallest securities settlements had fee awards ranging from 18% to 37.1%); *id.* (citing *In e Nat'l Health Labs. Sec. Litig.*, Nos. 92–1949 & 93–1694 (S.D. Cal. Aug. 15, 1995) ($64 million settlement and 30% fee award)).

### b)     The Risks of Litigation Were High

Co-Lead Counsel undertook this litigation with substantial risk that they might not obtain any recovery for Plaintiffs and the Settlement Class, a significant factor in the award of fees. *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301.  As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining the attorneys' percentage fee award. *See Vizcaino*, 290 F.3d at 1048-49 (that the case is "fraught with risk and recovery is far from certain" is "a relevant circumstance" that courts must take into account); *see also Am. Apparel*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").  There was no parallel government action, making the contingent risk even higher.

Courts nationwide have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove. *See, e.g., In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different.  As described in the accompanying Final Approval Brief (under the heading "Factual and Procedural Background") and in the Joint Decl. (at ¶¶ 7-41), Lead Counsel navigated the challenging terrain of the PSLRA by engaging in: (i) a thorough investigation of potential claims on behalf of Yahoo's investors resulting in Counsel's detailed pleading of the claims in the First and Second Amended Class Action Complaints; and (ii) hard-

fought litigation over Defendants' motions to dismiss—all before devoting the substantial time and resources needed to secure, prepare, and seek approval of the Settlement.  Even assuming Plaintiffs could have successfully overcome Defendants' motion to dismiss the Second Amended Class Action Complaint on scienter as well as loss causation grounds as to each data breach at issue in the Action, Co-Lead Counsel anticipated that discovery and trial would have been highly contested.  Plaintiffs would then have been required to successfully overcome likely post-trial appeals.

In sum, the obstacles faced by Plaintiffs and Co-Lead Counsel in seeking to recover against the Defendants in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and the applicable proof requirements during the later stages of the case (and on appeal).

### c) The Contingent Nature of the Fee and the Financial Burden Carried By Counsel

A determination of a fair fee must include consideration of its contingent nature.  It is "an established practice in the private legal market" to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)).  In fact, contingent fees that may far exceed the market value of the services, if rendered on a non-contingent basis, are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis, regardless of whether they win or lose.  *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis.").  Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees.  *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports an 18% award.  Co-Lead Counsel made a substantial outlay of both time and money in this case pursuing the claims at issue, resources that could have been devoted to the prosecution of other matters, while facing the very real risk of recovering nothing.  Many securities cases have been lost at trial, on post-trial motions, or on

appeal.  For example, in *In re JDS Uniphase Corp. Securities Litigation*, a securities class action litigated in this District, the jury issued a verdict in favor of defendants after years of litigation. No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).   In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation.  In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), the class won a $38 million jury verdict (exclusive of prejudgment interest), and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation.  *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *In re Vivendi Universal, S.A., Sec. Litig.*,  123 F. Supp. 3d 424 (S.D.N.Y. 2015) (post-trial summary judgment motion of defendants granted on reliance grounds in class action securities suit that was filed 13 years earlier and  had been previously decided in plaintiffs' favor at trial).

Co-Lead Counsel have received no compensation since this Action was filed (almost two years ago) and have incurred significant litigation expenses for the benefit of the Settlement Class. Although reimbursement was not assured, Co-Lead Counsel advanced $353,282.72 in expenses to date for the benefit of the Settlement Class.  *See* Joint Decl. ¶ 59.  Any fee award or expense reimbursement to Co-Lead Counsel has always been at risk and completely contingent both on the result achieved and on this Court's exercise of its discretion in making any award. Thus, this factor militates in favor of the Court granting Co-Lead Counsel's requested award of attorneys' fees and reimbursement of out-of-pocket expenses.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT. 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559 F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### d)  The Skill Required and the Quality of the Work

The "prosecution and management of a complex [ ] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same).  Here, the quality of Co-Lead Counsel's work is reflected in the recovery obtained, and the complex factual landscape under which it was obtained, including the Yahoo Defendants' unresolved motion to dismiss the Second Amended Class Action Complaint attacking, *inter alia*, the elements of scienter and loss causation.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990).  Co-Lead Counsel extracted a significant recovery for investors, up to 90% percent of recognizable losses depending on the relevant damages scenarios, and far outstripped the SEC's $35 million recovery from Defendants.

"The experience of counsel is also a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-33 (E.D. Pa. 2001)) ("the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re Pub. Serv. Co. of N.M.*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third of common fund). Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field.  *See* Ex. D of Lieberman Decl., attached as Joint Decl. Ex. 2 (Pomerantz firm resume); Ex. D of Crowell Decl., attached as Joint Decl. Ex. 3 (GPM firm resume).  Throughout the litigation, Co-Lead Counsel demonstrated to Defendants the skill and commitment necessary to bring the case to trial, as evidenced by their ability to extract an $80,000,000 recovery for the Class.  The skill demonstrated by Co-Lead Counsel supports the requested fee.

"The difficulty of securities litigation generally—particularly the challenges presented by the PSLRA's pleading requirements—requires skilled counsel familiar with the relevant statutes and case law." *Am. Apparel,* 2014 WL 10212865, at *22.  Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and damages, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. It is important to reward skilled counsel for pursuing difficult cases because

"the stated goal in percentage fee-award cases [is] ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (internal quotation marks omitted).

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Co-Lead Counsel. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *59 (N.D. Cal. Feb. 11, 2016); *Am. Apparel*, 2014 WL 10212865, at *22; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d. Cir. 1986). Here, counsel for the Defendants are prominent and highly-skilled attorneys from Morrison & Foerster LLP, Keker, Van Nest & Peters, LLP, and Boersch Shapiro LLP, with substantial experience in defending securities class actions, who vigorously defended this Action and provided top-tier legal services to their clients.

### e)       A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services) with the fee request made under the percentage-of-the-fund method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of UnitedStates,* 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each, in which the average multiplier is 3.28); *id.* at 1051 (quoting *WPPSS* for the proposition that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Indeed, the Ninth Circuit has

recognized that the "[risk multiplier] incentive is especially important in securities cases." *Stanger*, 812 F.3d at 741.

Here, the requested 18% fee amounts to a multiplier of 2.0 on Co-Lead Counsel's lodestar incurred in litigating the case against the Defendants and in securing and advancing the Settlement. Joint Decl. ¶ 58. Therefore, the lodestar cross-check confirms that the fee requested by Counsel is fair and reasonable. Additionally, Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion seeking payment of attorneys' fees and reimbursement of expenses. The 2.0 multiplier in this case is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. *Vizcaino*, 290 F.3d at 1051, n.6 (observing that "multiples ranging from one to four are frequently awarded," and affirming fee award of 28%, representing a 3.65 multiplier). The Ninth Circuit has surveyed numerous class action lodestars, finding that in 83% of those cases, the lodestar multiplier was between 1.0 and 4.0, and in 54% of the cases, it was between 1.5 and 3.0. *Id*; *see also Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) (awarding 30% fee, representing 2.77 multiplier) (***Koh, J.***); Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, *Wells Fargo*, No. 09-cv-1376 (N.D. Cal. Nov. 14, 2011), ECF No. 475 (awarding 19.8% fee, representing 2.82 multiplier) (***Koh, J.***); *Buccellato*, 2011 U.S. Dist. LEXIS at *10-11 (***Koh, J.***) (awarding 25% fee, representing a 4.3 multiplier); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4") (collecting cases).

   f)   **The Settlement Class's Reaction to the Fee Request Was Overwhelmingly Positive**

Despite the 773,140 Notices and Proofs of Claim mailed to Settlement Class Members (which stated that Lead Counsel would seek a fee award of up to 25% and up to $750,000 in expenses), along with the several other methods the Settlement Administrator employed to give

notice, to date, no objection specifically addressing the larger 25% fee award or reimbursement of expenses has been filed.  Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award."  *Heritage*, 2005 WL 1594389, at *15-*16 (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *see also Buccellato*, 2011 U.S. Dist. LEXIS, at *8; *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 148-49 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition"); *Omnivision*, 559 F. Supp. 2d at 1048 (filing of only three objections supports 28% award).[9]

## B.  LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS REASONABLE AND NECESSARY TO PROSECUTE THE LITIGATION AND OBTAIN THE SETTLEMENT

Co-Lead Counsel incurred out-of-pocket expenses of $353,282.72 in prosecuting this Action.  *See* Joint Decl. ¶ 59. Such expenses consist primarily of necessary mediation costs, expert fees, investigation expenses, research costs, travel expenses, and expenses associated with necessary court filings.  *See* Joint Decl. ¶¶ 59 - 61.

Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 WL 427887, at *2 (N.D. Cal. June 14, 1991); *see, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[L]itigation expenses make the entire action possible.").  It is well-established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced for the benefit of the class.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also Omnivision,* 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Immune Response*, 497

---

[9] Consistent with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity "thoroughly to examine counsel's fee motion," the deadline for filing any objections is August 16, 2018.  *See* Cormio Decl., Ex A at 2.

F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding that expenses are reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation and internal quotation marks omitted).

Courts within this Circuit, including this District, have granted requests for reimbursement of expenses such as the one here.  Counsel's expenses, which included "filing fees, … postage, … computer research, … and travel" fall squarely within "the types of expenses routinely charged to paying clients."  *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM (KSC), 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech. Sec. Litig*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant requests where "class counsel incurred out-of-pocket costs including[, among other things]: (1) filing fees; (2) copying, mailing, faxing and serving documents; … (4) conducting computer research; (5) travel to … hearings[] and mediation sessions; [and] (6) expert fees"); *see also In re Magsafe Apple Power Adapter Litig.*, No. 09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request of $100,000 in expenses that included "cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges."); *accord Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011).

Because the expenses were incurred with no guarantee of recovery, Counsel had a strong incentive to keep them as low as reasonably possible—and did.  Indeed, total expenses of $353,282.72 (*see* Joint Decl. ¶ 59) are less than the $750,000 estimate contained in the Notice, which generated no specific objection from the Settlement Class.  Each of the expenses for which Counsel seeks reimbursement was necessary to the successful prosecution of this case and is the type of expense that would have been billed to a paying client (*e.g.*, expert fees, mediation

fees, postage, court filing fees, etc.). Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

## C.    THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE APPROVED

The Plaintiffs also respectfully request that the Court award them the following amounts in connection with their representation of the Settlement Class:

| | |
|---|---|
| Ben Maher: | $235,200 (Maher Decl. ¶ 18); |
| Mike Winston, CFA: | $7,500 (Winston Decl. ¶ 9); |
| Nafiz Talukder: | $7,500 (Talukder Decl. ¶ 12). |

The PSLRA allows for reimbursements to representative plaintiffs in securities class actions for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). "Importantly, a court need not award all named plaintiffs the same incentive payment." *High-Tech Emp. Antitrust,* 2015 U.S. Dist. LEXIS 118052, at *61.

Plaintiffs dedicated their personal time and effort to prosecuting the Action. In particular, Plaintiff Maher, an investor with considerable knowledge of capital markets and private equity investments, spent approximately 588 hours providing, among other things, extensive substantive comments on the First and Second Amended Class Action Complaints, which involved detailed analyses regarding Yahoo's financial performance and valuation throughout the Class Period, including the value of Yahoo's user base and its diminution, the impact of the data breach on Yahoo, and the elements of scienter, loss causation, and damages; in-person and telephonic meetings with lawyers at Pomerantz to discuss the progress of the litigation; reviewing, analyzing, and providing substantive comments to Pomerantz in response to Defendants' motions to dismiss the First and Second Amended Class Action Complaints, including comments related to the valuation of Yahoo's user base, scienter, loss causation, and damages; meeting with the Hon. Weinstein and with Yahoo's counsel, Mr. Eth, to discuss the merits of the case and class-wide damages; engaging in extensive discussions with other securities class action plaintiffs firms as well as with his own personal attorneys to solicit their advice on the adequacy of the Settlement as well as a possible retention to file an Objection thereto, in connection with which Mr. Maher prepared a detailed presentation packet; and

reviewing the documents produced by Yahoo as part of confirmatory discovery.  Maher Decl. ¶¶ 6-14, 16, 18.

Plaintiffs have each submitted a declaration setting forth their participation in the Action, including time (ranging from 20 to 588 hours each) and effort devoted to, among other things: (1) reviewing pleadings; (2) providing trading records and PSLRA certifications; (3) overseeing the litigation; (4) communicating with counsel about the Action; and (5) considering and approving the Settlement.  *See* Maher Decl. ¶¶ 3, 6-15; Winston Decl. ¶¶ 3, 5-7; Talukder Decl. ¶¶ 3, 5-9.  The requested compensatory awards are fair and reasonable, constituting a sliver of the Settlement Fund (0.3% for Maher; 0.009% for Winston; 0.009% for Talukder).  *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062, 2017 U.S. Dist. LEXIS 86124, at *49 (N.D. Cal. June 5, 2017) (***Koh, J.***) (giving service awards of $90,000); *In re High-Tech Emp. Antitrust,* 2015 U.S. Dist. LEXIS 118052, at *61-*63 (***Koh, J.***) (giving service awards of $100,000 and $140,000); *Rhom v. Thumbtack, Inc.*, No. 16-cv-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) (award "equals approximately 1-2% of the total settlement fund, which is consistent with other court-approved enhancements").

## CONCLUSION

Plaintiffs and Co-Lead Counsel respectfully request that this Court award the requested attorneys' fees in the amount of 18% of the gross Settlement Fund, *i.e.*, $14,400,000.  Additionally, because the $353,272.72 in expenses that Co-Lead Counsel advanced for the benefit of the Settlement Class were reasonably necessary to the prosecution of this Action, and were the type usually billed to clients outside of a contingency payment arrangement, Plaintiffs and Co-Lead Counsel also request that the Court grant their reimbursement in full.  Finally, Plaintiffs and Co-Lead Counsel request that the Plaintiffs be awarded the above requested amounts ($235,200 for Ben Maher, $7,500 for Sutton View, and $7,500 for Talukder) for their efforts expended in this Action, without which the Settlement would not have been achieved.  To effectuate this relief, Plaintiffs and Co-Lead Counsel respectfully request that the Court enter the Proposed Order filed herewith.

1

Dated:  August 2, 2018

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted

**GLANCY PRONGAY & MURRAY LLP**


By: _s/ Joshua L. Crowell_
Joshua L. Crowell
Vahe Mesropyan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
jcrowell@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Emma Gilmore
Jay Douglas Dean
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
jddean@pomlaw.com

_Lead Counsel for Plaintiffs_

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile  (212) 697-7296
peretz@bgandg.com

_Additional Counsel for Plaintiffs_

**<ins>PROOF OF SERVICE BY ELECTRONIC POSTING</ins>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 2, 2018, at Los Angeles, California.

*s/ Joshua L. Crowell*
Joshua L. Crowell

# Mailing Information for a Case 5:17-cv-00373-LHK In Re Yahoo! Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Edward Andrew Bayley**
  ebayley@keker.com,laure-mandin-6675@ecf.pacerpro.com,lmandin@keker.com,efiling@keker.com,ed-bayley-0392@ecf.pacerpro.com

- **Martha A Boersch**
  mboersch@boerschshapiro.com,lkollios@boerschshapiro.com,rvorkoeper@boerschshapiro.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com,joshua-crowell-3496@ecf.pacerpro.com,VMesropyan@glancylaw.com,JLeinbach@glancylaw.com,JCohen@glancylaw.com

- **Jordan Eth**
  jeth@mofo.com,jordan-eth-3756@ecf.pacerpro.com,tkhadoo@mofo.com,trina-khadoo-5939@ecf.pacerpro.com

- **Emma Gilmore**
  egilmore@pomlaw.com,egoodman@pomlaw.com

- **Jo W. Golub**
  jgolub@keker.com,sandy-giminez-6735@ecf.pacerpro.com,SHarmison@keker.com,efiling@keker.com,jah@keker.com,jo-golub-8129@ecf.pacerpro.com

- **Michael Grunfeld**
  mgrunfeld@pomlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Lara Kollios**
  lkollios@boerschshapiro.com,dshapiro@boerschshapiro.com,rvorkoeper@boerschshapiro.com,mboersch@boerschshapiro.com

- **Adam G. Kurtz**
  agkurtz@pomlaw.com

- **Jennifer Michelle Leinbach**
  jleinbach@glancylaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,magdalena-blackmer-3352@ecf.pacerpro.com,judson-lobdell-6493@ecf.pacerpro.com,mblackmer@mofo.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Kathryn Elizabeth Ross**
  kathrynross@kathrynrosslaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)